**UNITED STATES of America, Plaintiff,**

**v.**

**Richard T. SILBERMAN, Chris Petti, Jack Norman Myers, Darryl Nakatsuka, and Terry R. Ziegler, Defendants.**

**Crim. No. 89–0417–JLI.**

United States District Court,
S.D. California.

March 9, 1990.

Assistant U.S. Attys. Charles G. Gorder, Jr., and Carol C. Lam, San Diego, Cal., for plaintiff.

James J. Brosnahan, George Harris and Hannah Bentley of Morrison & Foerster, San Francisco, Cal., for Silberman.

Oscar Goodman of Goodman, Steen & Chesnoff, Las Vegas, Nev., for Petti.

Michael J. Lightfoot and Stephen Sadowsky of Talcott, Lightfoot, Vandevelde, Woehrle & Sadowsky, Los Angeles, Cal., for Myers.

Mario Conte of the Federal Defenders of San Diego, for Nakatsuka.

John Mitchell of Mitchell & Mangione, San Diego, Cal., for Ziegler.

## MEMORANDUM DECISION AND ORDER RE CONSTITUTIONALITY OF 18 U.S.C. § 2518(11)

IRVING, District Judge.

The defendants' motion to suppress the fruits of wiretap surveillance on the basis of the unconstitutionality of 18 U.S.C. § 2518(11) came on for hearing on February 6, 1990, at 9:00 a.m., before the Honorable J. Lawrence Irving, United States District Court Judge. Assistant United States Attorneys Charles Gorder and Carol Lam appeared on behalf of the United States of America; James Brosnahan, George Harris and Hannah Bentley appeared on behalf of defendant Richard Silberman; Oscar Goodman appeared on behalf of defendant Chris Petti.

Having considered the pleadings and oral arguments of counsel, the court hereby issues the following memorandum decision and order.

### FACTS

Defendants Silberman, Petti, Myers, Nakatsuka and Ziegler are indicted for various money laundering and currency reporting violations. Approximately 21 months prior to the indictment, the government obtained an authorization pursuant to 18 U.S.C. § 2518(11) to intercept defendant Petti's telephone conversations by means of a so-called roving wiretap in connection with its investigation of defendant Petti's activities unrelated to this case. The order authorized the surveillance and interception of defendant Petti's conversations conducted over various and changing public telephones in San Diego County. For a period of approximately one and a half years thereafter, defendant Petti was the subject of court authorized electronic surveillance. In the course of the wiretap surveillance on Petti, the government also intercepted defendant Silberman's conversations. *See* Defendant's Memorandum of Points and Authorities in Support of Motion (# 3) to Suppress Fruits of Roving Wiretaps, at 1 n. 1. Defendants Petti and Silberman now argue that all conversations intercepted as the fruit of the roving wiretap must be suppressed. Specifically, the defendants argue that 18 U.S.C. § 2518(11) authorizing a roving wiretap is unconstitutional on its face and as applied because it fails to meet the probable cause and particularity requirements of the Fourth Amendment.

### DISCUSSION [1]

Title III of the Omnibus Crime Control and Safe Streets Act of 1968 ("Title III") governs the interception of wire communications. *See* 18 U.S.C. §§ 2510–2520. Wiretapping authorized under Title III has been found to comply with the Fourth Amendment. *See e.g., United States v. Turner,* 528 F.2d 143, 158–59 (9th Cir. 1975), *cert. denied,* 423 U.S. 996, 96 S.Ct. 426, 46 L.Ed.2d 371 (1975), 97 S.Ct. 105 (1976). Title III provides that a court may issue an order authorizing a wiretap for no more than 30 days if it determines, based on a supporting application, that: (1) there is probable cause to believe that an individual is committing, has committed, or is

---

**1.** The constitutionality of the roving wiretap under 18 U.S.C. § 2518(11) is an issue of first impression. The court notes, however, that two law review articles have been written addressing this issue. *See* Fishman, *Interception of Communications in Exigent Circumstances: The* *Fourth Amendment, Federal Legislation, and the United States Department of Justice,* 22 Ga.L. Rev. 65 (1987); Goldsmith, *Eavesdropping Reform: The Legality of Roving Surveillance,* 1987 U.Ill.L.Rev. 401 (1987).

about to commit a particular crime; (2) there is probable cause to believe that particular communications concerning that offense will be obtained through such interception; (3) normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed or to be too dangerous if tried; and, (4) there is probable cause to believe that the facilities from which or the place where the wire communications are to be intercepted are being used or are about to be used or are commonly used in connection with the commission of such offense, by such individual. 18 U.S.C. § 2518(5), 2518(3)(a)–(d).

In 1986, Congress amended Title III through the Electronic Communications Privacy Act to "update and clarify Federal privacy protections and standards in light of dramatic changes in new computer and telecommunications technologies." S.Rep. No. 541, 99th Cong., 2d Sess. 1, *reprinted in* 1986 U.S.Code Cong. & Admin.News 3555. Specifically, Title III was amended to include section 2518(11) which provides:

> The requirements of subsections (1)(b)(ii) [2] and (3)(d) [3] of this section relating to the specification of the facilities from which, or the place where, the communication is to be intercepted do not apply if—
>
> (b) in the case of an application with respect to a wire or electronic communication—
>
>> (i) the application is by a Federal investigative or law enforcement officer and is approved by the Attorney General, the Deputy Attorney General, the Associate Attorney General, an Assistant Attorney General, or an acting Assistant Attorney General;
>>
>> (ii) the application identifies the person believed to be committing the offense and whose communications are to be intercepted and the applicant makes a showing of a purpose, on the

part of that person, to thwart interception by changing facilities; and

> (iii) the judge finds that such purpose has been adequately shown.

The effect of section 2518(11) is to allow the issuance of a wiretap order that permits the interception of an identified person's conversations over facilities or telephones not specifically identified in the order. This provision was included because Congress found it "necessary to cover circumstances under which law enforcement officials may not know, until shortly before the communication, which telephone line will be used by the person under surveillance." S.Rep. No. 541, 99th Cong., 2d Sess. 31, *reprinted in* 1986 U.S.Code Cong. & Admin.News at 3585.

The defendants challenge the constitutionality of section 2518(11) on the basis that it impermissibly gives total discretion to the executing officers rather than the issuing judge to find probable cause as to the communications seized. Alternatively, the defendants argue that without describing with particularity the exact location of the facility or telephone to be wiretapped as required under section 2518(1)(b)(ii), the roving wiretap orders are "roving commissions to seize communications" akin to general warrants in violation of the Fourth Amendment.

### I. *Probable Cause as to Conversations Seized*

■ The defendants argue that the elimination of the probable cause requirement pursuant to section 2518(3)(d) gives the officer executing the wiretap order total discretion to find probable cause. In the court's view, this argument both misinterprets the language of section 2518(11) and mischaracterizes the executing officer's role as provided by the statute. Section

---

**2.** Section 2518(1)(b)(ii) requires that the application for an order authorizing a wiretap contain "a particular description of the nature and location of the facilities from which or the place where the communication is to be intercepted."

**3.** Section 2518(3)(d), in relevant part, provides that a judge may issue a wiretap order if he or

she determines, on the basis of the facts submitted by the applicant, that "there is probable cause for belief that the facilities from which, or the place where, the wire ... communications are to be intercepted are being used, or about to be used, in connection with the commission of such offense."

2518(11) does not eliminate the requirement that a court make a finding of probable cause under section 2518(3)(d). Rather, section 2518(11) merely modifies the requirement under section 2518(3)(d) that the exact location of the conversation to be intercepted be specified as part of that finding. *See* 18 U.S.C. § 2518(11). In fact, Chief Judge Gordon Thompson, Jr. specifically made the necessary probable cause findings in the July 1987 wiretap authorization order,[4] and all subsequent extension orders. Furthermore, the court is still bound to make the probable cause determinations under section 2518(3)(a) and (c). Therefore, contrary to what the defendants suggest, the statute provides for the court to make the probable cause determination in order to issue a warrant.

Only after this initial probable cause determination is made by the court can the executing agents then intercept certain communications. Although the agents then have the discretion to determine which conversations to actually monitor, this discretion is a distinct and separate issue from the initial probable cause determination made by a judge. Even if this discretion was somehow relevant to the probable cause determination, the discretion is limited by the statutory requirement that the agents monitor only the specific target's telephone calls. *See* 18 U.S.C. § 2518(11)(b)(ii). Such monitoring can only begin after the agents identify the facility at which the target begins or evidences an intention to begin a conversation. *See* 18 U.S.C. § 2518(12)[5]; *see also* S.Rep. No. 99–541, 1986 U.S.Code Cong. & Admin.

News at 3585. Furthermore, the agents are also under their normal obligation to minimize all actual interceptions. *See* 18 U.S.C. § 2518(5).

Accordingly, the court finds the executing agents do not have discretion to determine probable cause under section 2518(11). Rather, the probable cause finding remains in the hands of the issuing judge. Section 2518(11) therefore comports with the Fourth Amendment's probable cause requirement.

The defendants seem to further argue that the probable cause requirement under section 2518(3)(d) is constitutionally mandated such that its elimination under section 2518(11) renders section 2518(11) unconstitutional. Contrary to the defendants' argument, the court finds no indication that the language set forth in 18 U.S.C. § 2518(3)(d) is a mandated constitutional minimum from which any deviation would render section 2518(11) unconstitutional. Accordingly, the court also rejects this argument.

## II. *Fourth Amendment Particularity Requirement*

▬ The Supreme Court has interpreted the Fourth Amendment[6] to protect people, not places. *See Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 511–12, 19 L.Ed.2d 576 (1967). While this clarifies the nature of the Fourth Amendment protection, the court must determine, as an independent issue, whether section 2518(11) sufficiently meets the particularity clause which was established to effectuate that protection.

---

4. In addition to finding probable cause that defendant Petti had committed and was still committing certain listed offenses and that communications regarding those offenses may be obtained through interception, Judge Thompson specifically found that:
   There is probable cause to believe that ... various and changing pay phones located in San Diego County have been used, are being used, and will continue to be used by Chris Petti ... in connection with the commission of [the listed offenses].
   Order Authorizing Interception of Wire Communications, dated July 9, 1987, Misc. No 87–301.

5. Section 2518(12) provides that interception pursuant to subsection (11):

shall not begin until the facilities from which, or the place where, the communication is to be intercepted is ascertained by the person implementing the interception order.

6. The Fourth Amendment provides that:
   The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated and no warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.
   U.S. Const. Amend. IV.

In this regard, the court initially notes that Congress is presumed to enact laws that are constitutional. *See United States v. Thompson,* 452 F.2d 1333, 1337 (D.C.Cir. 1971), *cert. denied,* 405 U.S. 998, 92 S.Ct. 1251, 31 L.Ed.2d 467 (1972); *see also Illinois v. Krull,* 480 U.S. 340, 107 S.Ct. 1160, 1168, 94 L.Ed.2d 364 (1987); *McDonald v. Board of Election Comm'rs,* 394 U.S. 802, 89 S.Ct. 1404, 1408, 22 L.Ed.2d 739 (1969).

The purpose of the particularity requirement is to prevent general searches. *See Steagald v. United States,* 451 U.S. 204, 101 S.Ct. 1642, 1651–52, 68 L.Ed.2d 38 (1981).[7] To achieve that goal, the defendants argue, the particularity clause requires a precise description of the physical location for the search or seizure. This argument is premised on a literal reading of the Fourth Amendment's requirement that the place to be searched be particularly described. The Supreme Court, however, has unequivocally rejected a literal interpretation of the Fourth Amendment, opting instead for a flexible interpretation to keep pace with a technologically advanced and modern society. As the Supreme Court elaborated in *Steagald:*

> Our decisions in [the Fourth Amendment] area have not simply frozen into constitutional law those enforcement practices that existed at the time of the Fourth Amendment's passage. The common-law rules governing searches and arrests evolved in a society far simpler than ours is today. Crime has changed as have the means of law enforcement, and it would therefore be naive to assume that those actions a constable could take in an English or American village three centuries ago should necessarily govern what we, as a society, now regard as proper. Instead, the amendment's prohibition against "unreasonable searches and seizures" must be interpreted "in light of contemporary norms and conditions."

*Steagald,* 101 S.Ct. at 1650 n. 10 (citations omitted).

The Constitution and the Fourth Amendment are living documents that must be interpreted in the context of modern society. Accordingly, the court declines to adopt the defendants' approach to interpreting the particularity clause.[8] Instead, the court must look at the substance and rationale of the particularity clause.

The purpose of the Fourth Amendment's particularity requirement is to ensure that a search "will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit." *Maryland v. Garrison,* 480 U.S. 79, 107 S.Ct. 1013, 1017, 94 L.Ed.2d 72 (1987). In light of this purpose, this court believes that the particularity clause requires that a statute authorizing a search or seizure must provide some means of limiting the place to be searched in a manner sufficient to protect a person's legitimate right to be

---

**7.** The Court in *Steagald* stated that the purpose of the fourth amendment was, in part:

> to protect against the abuses of the general warrants that had occurred in England and of the writs of assistance used in the Colonies. The general warrant specified only an offense—typically seditious libel—and left to the discretion of the executing officials the decision as to which persons should be arrested and which places should be searched. Similarly, the writs of assistance used in the Colonies noted only the object of the search—any uncustomed goods—and thus left customs officials completely free to search any place where they believed such goods might be.

*Steagald,* 101 S.Ct. at 1651–52.

**8.** The deficiency of the defendants' literal interpretation of the particularity requirement is demonstrated in applying such an interpretation to "things to be seized" under the Fourth Amendment. In the context of seizing telephone conversations, the court would necessarily find that each intercepted conversation would constitute a separate search. *See Berger v. State of New York,* 388 U.S. 41, 87 S.Ct. 1873, 1883, 18 L.Ed.2d 1040 (1967) (analogizing eavesdropping over a two month period as the equivalent to a "series of intrusions, searches and seizures based on one showing of probable cause"). Taken literally, the particularity requirement would require each intercepted conversation to be explicitly listed in the wiretap authorization order, or to be the subject of separate individual orders. In other words, a strict interpretation of the particularity requirement as to things seized would require court approval of each and every conversation that would be monitored prior to the actual monitoring. This is clearly not required under the Fourth Amendment.

free from unreasonable searches and seizures. To the extent that this right may be protected without having to describe the exact location of the place to be searched, the statute would satisfy the Fourth Amendment. *See generally United States v. Karo,* 468 U.S. 705, 104 S.Ct. 3296, 3305, 82 L.Ed.2d 530 (1984) (recognizing that where it would be impossible for agents to specify the exact location of the place to be surveilled prior to actual surveillance, other forms of description would satisfy the Fourth Amendment requirement).

Accordingly, the court must determine whether the terms of section 2518(11) along with the other statutory provisions under Title III sufficiently protect an individual's Fourth Amendment rights. The government states that the section merely changes the method of describing the telephones not by their physical location or number, but rather by the person using the facility. The defendants suggest that section 2518(11) eliminates the Fourth Amendment particularity requirement altogether. The plain language of subsection 2518(11), however, states that it is the "specification" of the location of the communication to be intercepted as required under subsections (1)(b)(ii) and (3)(d) that need not apply. In passing section 2518(11), Congress envisioned a "relaxed specificity order" in response to situations such as "a person whose telephone calls were intercepted who said that he or she was planning on moving from phone to phone or to pay phones to avoid detection." S.Rep. No. 541, 99th Cong., 2d Sess. 32, *reprinted in* 1986 U.S. Code Cong. and Admin.News at 3586. Therefore, rather than completely eliminating the particularity requirement, the court interprets section 2518(11) to merely modify the extent of particularity required under subsection (1)(b)(ii) and (3)(d) once there has been a finding that the individual targeted is attempting to evade detection.

Whether this relaxed particularity standard in setting forth the scope of the search comports with the Fourth Amendment is determined by the sufficiency of the justifications and limitations set forth in the statute. The scope of a lawful search under the Fourth Amendment is defined by the object of the search and the places in which there is probable cause to believe that the object may be found. *Maryland v. Garrison,* 107 S.Ct. at 1017. In addition to other requirements, a roving wiretap under section 2518(11) may be authorized only in situations where a judge has determined that a person targeted for surveillance has evidenced an intent to thwart interception of his or her communications. *See* 18 U.S.C. § 2518(11)(b)(iii). The statute therefore addresses a situation where the place to be searched is constantly changing. Once a judge has made a determination that the location of the search is being purposefully changed in order to evade detection or interception by law enforcement agents, an order with an expanded scope is clearly justified to counteract such attempted evasion.

The statute also contains additional protections against arbitrary surveillance. Section 2518(11) limits the number of people who may seek a roving wiretap order by requiring advance approval from certain officials. *See* 18 U.S.C. 2518(11)(b)(i). Section 2518(11)(b)(ii) limits monitoring to only the conversations of the targeted individual. *See* 18 U.S.C. § 2518(11)(b)(ii). In many cases, such a limitation in fact protects the Fourth Amendment interests of innocent third-parties to an even greater extent than do the limitations imposed under a standard wiretap order. An ordinary wiretap specifies a particular location or telephone line for interception. Subject to the minimization requirement, any and all conversations occurring over that line may be legally intercepted, even if none of the targeted individuals named in the order is a party to the conversation. Under a roving wiretap, interception of conversations to which a targeted individual is not a party is prohibited. Therefore, under the stringent limitation imposed by section 2518(11)(b)(ii), interception pursuant to a roving wiretap may be even less intrusive of third-party rights than standard wiretap warrants that specify only places. Moreover, section 2518(12) permits actual interception of the communications to begin only when the communication to be intercepted is ascer-

tained by the executing agent.[9] *See* 18 U.S.C. § 2518(12). Furthermore, the other limitations imposed by previously existing sections under Title III apply equally to roving wiretap orders. These limitations include issuance of an order only after a judge has made a finding of probable cause and necessity under 18 U.S.C. § 2518(3), and the standard imposition of the minimization requirement on the executing agents. *See* 18 U.S.C. § 2518(5). Finally, although not statutorily mandated, the legislative history suggests several factors to which the court should look in considering whether to issue a roving wiretap order.[10]

Therefore, the court finds that the roving wiretap statute sufficiently tailors the search it authorizes to its need. The scope of the search, albeit wide, is justified where the court has found sufficient probable cause to intercept telephone conversations, but is not able to specify the exact location of these conversations due to the target's attempt to evade surveillance by alternatively using various public telephones. The statute provides for appropriate safeguards in authorizing a certain type of intrusion under a narrow set of circumstances and properly balances an individual's right to be free from unreasonable searches and seizures with law enforcement's interest in combatting crime. Section 2518(11), examined in light of the other limitations imposed under Title III, permits for "no greater invasion of privacy than is necessary." *Katz v. United States,* 88 S.Ct. at 513.

The court recognizes that the need to protect arbitrary government intrusion is especially great in the case of wiretapping. *Berger v. State of New York,* 388 U.S. 41, 87 S.Ct. 1873, 1882, 18 L.Ed.2d 1040 (1967). While the Fourth Amendment serves to protect against unreasonable intrusions resulting from government exploitation of technology, it may not serve as an absolute

shield for criminals to exploit society's technological advances for purposes of impeding law enforcement efforts. Much as the court in *Katz* recognized the vital role that the public telephone has come to play in private communication, this court must also recognize the vital role that the public telephone has come to play in organized crime's attempted evasion of law enforcement surveillance. *See Katz v. United States,* 88 S.Ct. at 511–12.

Accordingly, the court finds that 18 U.S.C. § 2518(11), construed in conjunction with the other statutory requirements under Title III, is constitutional and does not violate the Fourth Amendment's particularity requirement.

### III. *Unconstitutionality of 18 U.S.C. § 2518(11) as Applied*

■ Other than alleging in a conclusory manner that section 2518(11) is unconstitutional as applied, the defendants have failed to set forth any facts or arguments to support their assertion. Furthermore, the only defendant to have been the actual named target of the roving wiretap was defendant Petti. As section 2518(11) was clearly intended to address exactly the sort of surveillance evasion tactics in which defendant Petti is alleged to have engaged, the court finds no constitutional infirmity in section 2518(11) as applied to him. As to defendant Silberman, to the extent that he has standing to raise an "as applied" constitutional challenge, his motion is also denied for failure to allege any facts or arguments to support this challenge.

Alternatively, the defendants have requested an evidentiary hearing to determine the constitutionality of section 2518(11) as applied. This request was made for the first time during oral arguments on February 6, 1990 and the supporting memorandum of points and authorities

**9.** Actual interception may take place only when the suspect "begins or evidences an intention to begin a conversation." S.Rep. No. 541, 99th Cong., 2d Sess. 32, *reprinted in* 1986 U.S.Code Cong. and Admin.News at 3586.

**10.** "The request for an order pursuant to section 2518(11), and the order itself, should specify a

reasonably limited geographic area, the number of phones (and phone numbers) if known, to be intercepted, and the time within which the interception is to be accomplished." S.Rep. No. 541, 99th Cong., 2d Sess. 32, *reprinted in* 1986 U.S.Code Cong. and Admin.News at 3586.

**1064**

was filed on February 12, 1990. Other than stating in a conclusory fashion that such a hearing is needed to establish a full factual record to determine whether the agents complied with section 2518(11) in executing the wiretaps, the defendants have raised no set of facts nor arguments to support this request. Furthermore, the defendants have not alleged any instance of even suspected non-compliance by the agents in executing the wiretap orders. Accordingly, the court finds no basis to grant an evidentiary hearing.

### CONCLUSION

Defendants' motion to suppress the fruits of wiretaps based on the unconstitutionality of 18 U.S.C. § 2518(11) both on its face and as applied is hereby denied.

Defendants' motion for an evidentiary hearing on the constitutionality of 18 U.S.C. § 2518(11) is hereby denied.

IT IS SO ORDERED.