COMMONWEALTH vs. MIGUEL RAMOS. No. 90-P-14. February 22, 1991. *Controlled Substances. Practice, Criminal,* Instructions to jury, Comment by judge, Disclosure of evidence, Assistance of counsel. *Evidence,* Cross-examination.

Miguel Ramos was convicted by a jury of trafficking in 248.5 grams of cocaine, and so violating G. L. c. 94C, § 32E(*b*)(3).[1] On the evidence most favorable to the Commonwealth, the jury were able to find that Ramos had brokered the sale of the cocaine between the seller, Louis Boulles, and the buyer, State Trooper Kenneth Gill, who was operating under cover. The transaction was consummated under police surveillance, and, when the cocaine and money changed hands, Ramos, Boulles, Gill (still under cover), an apparent informer (Roberto), and Jorge Perez, an alleged associate of Boulles, were arrested.[2] The theory of the defense was that Ramos was a bit player, an addict who introduced a customer to Boulles, expecting that he would receive as a reward from Gill an "eight-ball," i.e., an eighth of an ounce of cocaine, but that Ramos never controlled the cocaine trade and, thus, did not rise to the level of a trafficker in the substance. We affirm.

1. *Jury instructions.* On appeal, Ramos argues that the judge misstated the evidence, even in the light most favorable to the Commonwealth, in that he suggested the jury could find that Ramos had actually handled the two bags of cocaine sold, each of which contained 100-plus grams. Ramos complains that there was no evidence he had touched more than one of the bags and, therefore, he could not have possessed, with intent to distribute, over 200 grams. There had been no defense objection to that aspect of the jury charge, however, and the point, even if there were something to it, cannot be raised for the first time on appeal. Mass.R.Crim.P. 24(b), 378 Mass. 895 (1979). *Commonwealth v. Pickles,* 393 Mass. 775, 776 (1985). *Commonwealth v. Griffin,* 19 Mass. App. Ct. 174, 180 (1985). There is no substantial risk of a miscarriage of justice. See *Commonwealth v. Freeman,* 352 Mass. 556, 563-564 (1967). Possession does not turn on physical handling but, as the judge correctly instructed, on control over the illicit substance. *Commonwealth v. Brzezinski,* 405 Mass. 401, 409 (1989). *Commonwealth v. Rosa,* 17 Mass. App. Ct. 495, 498 (1984). In any event, there was potent evidence that Ramos had rendered aid in commission of the crime, namely, the sale of the cocaine by Boulles to Gill. See *Commonwealth v. Chinn,* 6 Mass. App. Ct. 714, 716 (1978). Ramos did this by negotiating, as between Boulles and Gill, the quantity, price, and place of

---

[1]The offense, which carried a mandatory minimum sentence of ten years, occurred on March 23, 1988. Later that year, in July, St. 1988, c. 124, revised § 32E. The penalty for trafficking in over 200 grams of cocaine now appears in subparagraph (*b*)(4) of § 32E, and imposes a minimum mandatory sentence of fifteen years.

[2]Perez was indicted, tried, and acquitted. Boulles was indicted, jumped bail of $60,000, and never came to trial.

delivery. He then accompanied Gill to the place of delivery and sat in Gill's car while money and cocaine were exchanged. Not the least persuasive evidence on this score came from the lips of Ramos: "Yes, sir," he said on cross-examination, "I took him [Gill] to Boulles . . . . I wanted the Trooper to buy the cocaine . . . because I was hoping to get the cocaine . . . ."

2. *Judge's comment on voluntariness of defendant's inculpatory remarks to the police.* One of the arresting officers, Trooper Cox, testified that Ramos, although advised of his right to remain silent, burst out as the police moved in on him, "I'm stupid, I knew he was a cop. I knew he was a cop, I'm stupid, I fucked up." Before this testimony came in there had been a voir dire, following which Ramos and his counsel conceded the voluntariness of the statement with the understanding that the government would not press why Ramos knew one of the arresting officers and that the judge would inform the jury that there were many reasons other than criminal history for knowing or being known by a police officer. Counsel and the judge were taken aback when, on cross-examination, the defendant denied having received the Miranda warning. The judge thought some explanation was owed the jury when it came time to instruct them. He told them that, while it was up to them to find what Ramos had said when arrested, it had been agreed that, whatever he said, he had spoken voluntarily after he had been advised of his rights. At the time the judge announced his intention to address the jurors on this point, defense counsel announced his intention to object should the judge's instruction appear to make Ramos out to be a liar. Again, no objection was made on this aspect of the judge's charge after it was delivered; the point is, therefore, lost on appeal; and there is no substantial risk of a miscarriage of justice. The judge attributed the defendant's misstatement to "the excitement of the cross-examination or some such thing as that." Read in their entirety, the judge's remarks do not suggest that Ramos was an untruthful witness, but only a momentarily confused one. The lack of an objection suggests trial counsel was satisfied. See *Commonwealth* v. *Vidito,* 21 Mass. App. Ct. 332, 335 (1985). It is most unlikely that the jury would have been misguided by the judge's elliptical comments about the voluntariness of the defendant's statements.

3. *Withholding and exclusion of evidence about the informer, Roberto.* Trooper Gill had been accompanied by a man the defendant referred to as Roberto. It was Roberto who had made contact with Ramos in the first instance at Kenny & Sullivan's Bar in Chelsea. No reference to Roberto appeared in any police report, and the government did not call him as a witness. Before the trial began, the government made a motion in limine intended to preclude questions which would reveal that a police informer had played a role in the sting operation or would reveal the identity of the informer. One wishes that the motion had been more explicit than it was in stating that purpose; but the judge explained that such would be the effect

30 Mass. App. Ct.           917

Rescript Opinions.

of the allowance of the motion. Ramos protests on appeal that: (a) the Commonwealth withheld from him knowledge of the existence and identity of the informer; and (b) he should have been allowed to cross-examine about the identity of the informer.

As to point (a), in the absence of a specific request by the defendant, the Commonwealth was not bound to disclose that it had used an informer or to disclose the identity of the informer. *Commonwealth* v. *Monteiro*, 396 Mass. 123, 129 (1985). As to point (b), Roberto's existence was well known to Ramos, who saw him, talked to him, and dealt with him. In the course of his testimony, Ramos elaborated on his conversations and dealing with Roberto. Had Ramos or his lawyer thought seriously that the true identity of Roberto and what Roberto knew would be of any assistance to the defense, we may suppose there would have been some effort to interview him, an effort which would have begun with a request to the government for his name and address. There was no such effort. Nor, at trial, was there any suggestion that Roberto might have anything to say that would help the defense. The only argument made by Ramos's lawyer in opposition to the motion in limine was that the defense did not wish it to appear that Ramos had initiated the drug transaction. That possibility was met by testimony that it was, indeed, Roberto who had entered the bar in Chelsea, and, after some preliminary conversation, had said he was looking for a pound of cocaine. There is no merit to the appellate argument, which seems flavored with afterthought, that the defense was hampered by lack of access to Roberto.

4. *Other appellate points.* (a) Comments by the prosecutor as to what the jury might conclude about the credibility of witnesses were well within bounds. *Commonwealth* v. *Lucido*, 18 Mass. App. Ct. 941, 943 (1984). There was no improper vouching for the credibility of the government's witnesses. See *Commonwealth* v. *Bourgeois*, 391 Mass. 869, 878-879 (1984).

(b) Asking Ramos on cross-examination, "Do you have a selective memory now," was, in context, permissible follow-up to an answer by Ramos, "I remember most of it." The question was markedly different from persistent efforts to have a witness characterize his own testimony or that of another witness as true or false, a practice upon which we have commented adversely. See, e.g., *Commonwealth* v. *Ward*, 15 Mass. App. Ct. 400, 401-402 (1983).

(c) During his cross-examination, Trooper Gill stated that he saw an arresting officer take a knife from Ramos. There had been no evidence on direct examination to that effect. The judge immediately struck Gill's answer and directed the jury not to consider it. We assume, generally, that the jury will follow instructions to disregard matter withdrawn from their consideration. *Commonwealth* v. *Gordon*, 356 Mass. 598, 604 (1970). *Commonwealth* v. *Brown*, 376 Mass. 156, 165 (1978).

(d) In accordance with what has become standard operating procedure, appellate counsel criticizes the assistance rendered by trial counsel as ineffective. There is a risk that too-ready invocation of this appellate point will trivialize it. So here. Trial counsel's failure to identify and call Roberto as a witness reflects an acceptable tactical judgment that what probably would have been obtained from Roberto was confirmation of the prosecution's story. It was also sound tactical judgment to forgo an entrapment defense. Ramos, even on his own testimony, had responded with such readiness to an invitation to assist in a large drug transaction that entrapment was not a plausible defensive posture. There was more hope in trying to persuade the jury that they ought not to convict of trafficking a hapless addict who seized on a fortuitous opportunity for a cocaine fix. See *Commonwealth* v. *Rondeau*, 378 Mass. 408, 412-413 (1979); *Commonwealth* v. *White*, 409 Mass. 266, 272-277 (1991); *Commonwealth* v. *McGann*, 20 Mass. App. Ct. 59, 61-62 (1985).

(e) The defense makes a scattershot attack on the judge's instructions as "verbose, convoluted and often incomprehensible." Such might be the impression of a reader who examines isolated passages. Reading the entire instruction, see *Commonwealth* v. *Carrion*, 407 Mass. 263, 270 (1990), we conclude that the jury were correctly instructed, particularly on the point of specific intent to commit the crime charged, the only subject about which defense counsel had something to say after the instructions were delivered.

*Judgment affirmed.*

*Richard A. Cohen* for the defendant.

*Robert N. Sikellis*, Assistant Attorney General, for the Commonwealth.