COMMONWEALTH *vs.* WILLIAM MANRIQUE.

No. 91-P-59.

Plymouth. September 19, 1991. - November 29, 1991.

Present: PERRETTA, KASS, & GILLERMAN, JJ.

*Practice, Criminal,* Disclosure of identity of informer, Access to informer, Access to witness. *Evidence,* Informer, Prior consistent statement. *Controlled Substances.*

There was no merit to a criminal defendant's contention that the Commonwealth wrongfully denied him access to a police informer, where the Commonwealth had offered to produce all available information on the whereabouts of the informer, and where it appeared that defense counsel's strategy was not to seek an interview with the informer but rather to secure a "missing witness" instruction in the informer's absence. [601-603]

At the trial of an indictment for trafficking in cocaine, sufficient evidence was presented for a finding of guilty either on the theory that the defendant knowingly and intentionally brought into the Commonwealth 200 grams or more of cocaine or the theory that the defendant possessed such quantity of cocaine with intent to distribute it. [603-605]

There was no error at a criminal trial in the judge's allowing the use of a prior consistent statement to rehabilitate a police witness where defense counsel had sought to show that his trial testimony was inconsistent with statements he had made before the grand jury. [605]

INDICTMENT found and returned in the Superior Court Department on September 15, 1987.

A motion for access to a police informer was heard by *William H. Carey,* J., and the case was tried before *John D. Sheehan,* J.

*Wendy Sibbison* for the defendant.

*Mary O'Sullivan Smith,* Assistant District Attorney, for the Commonwealth.

GILLERMAN, J. On the afternoon of August 24, 1987, in accordance with a plan adopted earlier that day at a meeting among Trooper Mark Stevens and two informants, Rick Es-

tano (Rick) and either Charles Risio or Charles Rubino (both of whom were known as ("Chuck"), Trooper Stevens, in plain clothes and driving an unmarked Cadillac automobile, arrived at a public rest area on Route 3 in Plymouth. An unoccupied, white Mercedes automobile with District of Columbia license plates was parked in the area, as was a gray Chrysler with two occupants, Rick and the defendant.

The jury could have found that the following events then took place. Stevens parked his car and walked over to the Chrysler where Rick introduced him to the defendant. The defendant got out of the Chrysler and, together with Stevens, walked toward the Cadillac. Rick, meanwhile, drove away in the Chrysler.

After Stevens and the defendant were seated in the Cadillac, the defendant asked Stevens whether he had the money. Stevens said that it was in the glove compartment. Stevens then asked the defendant whether he had the "kilo of coke." The defendant replied that it was in the trunk of his car, and he added, "Did Rick tell you that it was going to cost $27,000?" Stevens said he was aware of the price and reached into the glove compartment, removed a canvas bag, and handed it to the defendant. Inside the bag were twenty-seven $1,000 bundles of United States currency. The defendant "thumbed through it like you would a deck of cards." After he was satisfied that all the money was there, the defendant returned the bag to Stevens. The two then walked to the Mercedes, and the defendant opened the trunk of the automobile. Inside was a miscellaneous collection of clothes, papers, a vacuum cleaner, cleaning agents, sprays for the upholstery, and, finally, an off-white bathing towel which, when unfolded by the defendant, revealed a white plastic case about one foot long, two inches thick, and six inches wide. Inside the case was a square object, "like a brick," wrapped in tape with a small hole in the center of the brick.

Stevens examined the brick and said to the defendant, "It looks like it's good stuff." The defendant replied, "It's the best." The defendant then returned the brick to the plastic container, wrapped the container in the bath towel, shut the

trunk, and, with Stevens directly behind him, walked toward the Cadillac, presumably to retrieve the cash in the canvas bag. As they were walking, Stevens asked the defendant, "[C]ould this be done on a monthly basis?" The defendant answered, "It could be done on a daily basis, just get in touch with Rick." At this point Trooper Stevens, stepping up from behind the defendant, wrapped his left arm around the defendant's chest, with his other hand put his service revolver to the defendant's head, identified himself as a State police officer, and told the defendant he was under arrest. He then advised him of his rights.

The defendant appeals from his conviction of trafficking in 200 grams or more of cocaine, see G. L. c. 94C, § 32E(*b*)(3), as appearing in St. 1983, c. 571, § 3, claiming that he was wrongfully denied access to a known informer, that there was insufficient evidence to justify the submission of the case to the jury on the theory that the defendant brought cocaine into the Commonwealth, and that the judge erred in permitting the admission of certain testimony.

1. *Access to a known informer.* The first claim arises out of the judge's denial of the defendant's motion "to secure access to informer." The relevant facts, which are not in dispute, are these. By letter dated February 28, 1989, the prosecutor informed defendant's counsel of "potentially exculpatory evidence."[1] The letter disclosed Rick's identity as Richard Estano and that, following the arrest of the defendant, Charles Risio and Charles Rubino provided the State police with information about the drug activity of a third person. It later turned out that the information given to the police about the third person, the letter continued, had in fact been fabricated, and Risio and Rubino were now charged with obstruction of justice and related offenses.

There matters stood, so far as appears from the record, until June, 1989, when the defendant filed a pretrial motion

---

[1]In a written pretrial conference report the Commonwealth agreed to provide the defendant with "exculpatory evidence within the possession, control, or custody of the Commonwealth." See *Commonwealth* v. *Pizzone*, 27 Mass. App. Ct. 376, 382 (1980).

which sought to "secure access"[2] to Estano by requiring the
Commonwealth to produce him at a hearing in order to de-
termine "whether or not the informer is presently amenable
to questioning by the defense." At the hearing on the defend-
ant's motion the prosecutor told the judge:

> "[T]he defendant isn't entitled to an evidentiary
> hearing. . . . As to the informant in this case, . . . Mr.
> Estano, his identity has been disclosed to the defense
> attorney. *I can give whatever information I'm able to
> give as to the latest location that we know of. I don't
> think it's incumbent upon the Commonwealth to do
> anything further.* If he feels it necessary to contact this
> informant whose identity has been disclosed, defense
> counsel can do that. He can contact him. He can inter-
> view him. He can determine whether or not there is any
> information that this informant can produce that will be
> helpful to his defense, and in that case he can produce
> the informant himself." (Emphasis added.)

Defense counsel replied that he had no information as to
the whereabouts of Estano and that it would "not be difficult
for the District Attorney's office to produce him . . . so that
my office might have the opportunity to conduct an in-
quiry . . . ." Defendant's counsel conceded, however, that if
they were given Estano's address and if "it would be possible
for us to contact him, that way, *then that would probably
serve the purpose*"[3] (emphasis added).

---

[2]The quoted phrase came, no doubt, from *Commonwealth* v. *Curcio*, 26
Mass. App. Ct. 738, 746 (1989). In *Curcio*, unlike this case, the defendant
had an address for the informer, but he could not find the informer to
serve him with a subpoena.

[3]Indeed, in counsel's affidavit filed in support of the motion to secure
access, counsel asserted only that the Commonwealth "must *offer* the de-
fense whatever information it has about the informer's location" (emphasis
added). That offer was made, but the defendant remains unsatisfied.

The judge, who said that he regarded the request for a hearing as "unusual,"[4] denied the motion, and the issue was not reopened by the defendant until the trial, nine months later (March 28-29, 1990). Trial testimony on March 28, 1990, revealed that Estano was then incarcerated in Danbury Federal prison and that he had been there for "at least two years, maybe three." This would put Estano in Danbury prison when the prosecutor wrote her letter in February, 1989,[5] and at the time of the hearing on the defendant's motion in June, 1989. "Why, oh, why," asked defendant's counsel at trial in support of his oral motion to dismiss the indictment, "haven't we been told where Mr. Estano has been all these years?"

The argument then was, and on appeal now is, that given the Commonwealth's obligation to provide the address of Rick to the defendant, see *Commonwealth* v. *McMiller*, 29 Mass. App. Ct. 392, 407 (1990), the failure to do so was a denial of the defendant's constitutional rights. Even accepting the defendant's argument that his motion to secure access should be treated as a request for the address of Rick,[6] it does not follow that the defendant was deprived of his asserted State and Federal constitutional rights.

The transcript of the hearing on the motion suggests that the judge denied the defendant's motion because he believed that the defendant already possessed Estano's address, see note 4 *supra*, and because the need for an evidentiary hearing had not been demonstrated.[7] While the judge may have misunderstood the prosecutor, defendant's counsel certainly could not have misunderstood the judge, whose statement concerning the delivery of Estano's address quoted in note 4,

[4]The judge also said, referring to the prosecutor's remarks quoted above, "She said she had given you his last address." It would appear that the judge misunderstood the prosecutor on this point.

[5]It does not appear that the prosecutor had this information when she wrote her letter in February, 1989.

[6]Other than the motion, counsel made no request of the prosecutor for Estano's address.

[7]Defendant's counsel suggested at the hearing that the problem was the possibility of Estano's refusing to talk to him; however, counsel, it seems, had made no attempt to obtain Estano's address or to interview him.

*supra*, appeared to support what the judge understood the prosecutor to have done.

Given the proffer of all available information by the prosecutor in open court at the hearing on the motion,[8] the defendant's argument to this court that he was "denied access" to Estano lacks substance. It is a quibble to say that the Commonwealth failed in the performance of its constitutional obligations by failing to provide Estano's address when it offered to deliver that information to the defendant's counsel. See *Commonwealth* v. *Curcio*, 26 Mass. App. Ct. 738, 747 (1989) (where the defendant required the address of a known informer in order to serve him with a subpoena, the Commonwealth "must *offer* the defense whatever information it had about the informer's location" [emphasis added]). If for any reason the Commonwealth had not been forthcoming in its response to the specific request for information as to Estano's whereabouts, the defendant could have had prompt access to a judge for the relief to which he would have clearly been entitled.[9]

The defendant does no better by insisting on an evidentiary hearing. The judge, in denying the motion, could reasonably have expected that the defendant would attempt to interview Estano before applying to the court for relief, compare *Commonwealth* v. *Ramos*, 30 Mass. App. Ct. 915, 917 (1991), and counsel offered nothing to the judge which made it reasonable to expect that an out of court interview with Estano would have been entirely futile. Indeed, trial counsel

---

[8]Information available to the prosecutor necessarily includes information in the possession of the police. See *Commonwealth* v. *Redding*, 382 Mass. 154, 157 (1980).

[9]If, at that point, the Commonwealth refused to provide the information, the defendant would have been entitled to an order of the court requiring the release of the information. See *United States* v. *Agurs*, 427 U.S. 97, 106 (1976) ("When the prosecutor receives a specific and relevant request, the failure to make any response is seldom, if ever, excusable"); *Commonwealth* v. *Lugo*, 406 Mass. 565, 572 (1990). If the Commonwealth did not then have the information, but later came to possess it, it would have had the continuing duty to disclose it. See Mass.R.Crim.P. 14(a)(4), 378 Mass. 875 (1978).

conceded at the hearing that possession of Estano's address "would probably serve the purpose. . . ."

We do not suggest that trial counsel was neglectful or indifferent to his responsibility to prepare the case for trial. To the contrary, it is clear to us that when he showed no interest in Estano's whereabouts for nine months, only to be intensely interested in that subject at the trial, he demonstrated a deliberate strategy which eschewed an interview with Estano[10] in favor of a missing witness instruction — which the judge gave along with an instruction on entrapment. "That was excellent, Judge," the defendant's trial counsel told the judge following the judge's instructions to the jury. Compare *United States* v. *Diaz*, 535 F.2d 130, 135 n.5(1976) ("The request for [a missing witness] instruction sometimes indicates that defense counsel is more interested in exploiting the witness's absence than seeing him produced").

2. *The importation of cocaine.* In response to a question from the jury during their deliberations as to whether trafficking is "all one charge" or whether "bringing in [is] separate from intent to manufacture or distribute," the judge read the statute to the jury and added that trafficking may consist either of the knowing and intentional possession with intent to distribute 200 grams or more of cocaine, or of "knowingly and intentionally bring[ing] into the Commonwealth 200 grams or more of cocaine." Counsel did not object to this instruction, but on appeal he now claims it was error, requiring reversal of the judgment because of the asserted absence of evidence of "bringing in."

Assuming the issue is open on appeal as a result of the defendant's generalized motion for a required finding of not guilty on all charges at the close of the Commonwealth's case, see *Commonwealth* v. *Fickett*, 403 Mass. 194, 197 (1988), there was sufficient evidence for a rational trier of fact to have found beyond a reasonable doubt, see *Commonwealth* v. *Nardone*, 406 Mass. 123, 129 (1989), either on the theory of "bringing in" or on the theory of possession with

---

[10]Estano could have been required to testify in a Massachusetts court. See Smith, Criminal Practice and Procedure § 1555 (2d ed. 1983).

intent to distribute, the essential elements of the crime of trafficking. Compare *Commonwealth* v. *Fickett, supra* at 197 (insufficient evidence of one of the several theories given to the jury required reversal of the judgment of conviction and a new trial).

We view the evidence in the light most favorable to the Commonwealth, see *Commonwealth* v. *Nardone, supra* at 129, and on that basis we conclude that there was sufficient evidence to support the "bringing in" theory. In the absence of Massachusetts authority describing the elements of "bringing in," we follow decisional authority under the Federal analogue, 21 U.S.C. § 952(*a*) (1988).[11] There must be satisfactory proof that (i) the cocaine was brought into the Commonwealth from someplace outside and (ii) the defendant in some manner participated in the act of importing. See *United States* v. *Manbeck*, 744 F.2d 360, 385 (4th Cir. 1984).

Evidence that the defendant resided, as he admitted, outside the Commonwealth,[12] that he was in control of an automobile (which he referred to as "his" car) with out-of-State license plates and in which cocaine, likely to have come from South America,[13] had been hidden, that the automobile was parked in a rest area on a major motor highway awaiting the rendezvous with Trooper Stevens, and that inside the automobile were men's clothing, toiletries, jewelry, and

---

[11]Section 952(*a*) provides in pertinent part: "It shall be unlawful to import into the customs territory of the United States from any place outside thereof (but within the United States), or to import into the United States from any place outside thereof, any controlled substance in schedule I or II of subchapter I of this chapter, or any narcotic drug in schedule III, IV or V of subchapter I of the chapter . . . ."

[12]There was testimony that the defendant, while being transported to the Middleborough State police barracks, and after being told his rights for a second time, said that he was from either Washington, D.C., or Florida (Trooper Gordon could not remember which). There is no claim that what the defendant said was involuntary.

[13]There was expert testimony that usually a kilogram of cocaine is untouched from the source location where it was made and packaged, usually South America.

"maps throughout the interior compartment of the car"[14] is sufficient in the aggregate to permit the jury to infer that the defendant drove into the Commonwealth from someplace outside, knowingly and intentionally bringing more than 200 grams of cocaine with him. There need not be testimony of an observed territorial crossing. *Ibid.* Federal cases cited by the defendant have no bearing on the factual pattern present in this case: In *United States* v. *Nusraty*, 867 F.2d 759, 764, 766 (2d Cir. 1989), there was no evidence that the defendant ever took possession, either actual or constructive, of the cocaine; in *United States* v. *Harris*, 908 F.2d 728, 735 (11th Cir. 1990), the evidence failed to connect the defendant (Bucchiere) with any activities of importation; in *United States* v. *Soto*, 591 F.2d 1091, 1104 (5th Cir. 1979), there was no evidence the boat in question had ever left the territorial waters of the United States.

3. *The admission of a prior consistent statement.* Finally, the defendant argues that the judge erroneously permitted the prosecutor to inquire into a statement made by Trooper Stevens in his police report. The defendant's counsel, on cross-examination of Trooper Stevens, had sought to show that his trial testimony was inconsistent with his grand jury testimony. The prosecutor offered in rebuttal Stevens' police report, which had been made prior to the grand jury testimony and was consistent with Stevens' trial testimony.

Following a timely objection by the defendant, the judge said, "[Y]ou brought up something. . . . She's trying to show that this isn't a recently contrived story on the part of the witness."

We have read the testimony, and it is clear to us that the judge did not abuse his discretion. See *Commonwealth* v. *Healey*, 27 Mass. App. Ct. 30, 35 (1989), and cases cited.

*Judgment affirmed.*

---

[14]There was also testimony that the police found in the glove compartment of the Mercedes a passport and immunization papers, but the testimony did not specify to whom the passport and papers belonged.