## COMMONWEALTH *vs.* ANTHONY PENTA.

Middlesex. May 6, 1996. - August 22, 1996.

Present (Sitting at Barnstable): LIACOS, C.J., WILKINS, ABRAMS, LYNCH, O'CONNOR, GREANEY, & FRIED, JJ.

*Practice, Criminal,* Access to witnesses, Conduct of prosecutor, Warrant, Double jeopardy. *Evidence,* Informer, Chain of custody. *Eavesdropping. Electronic Surveillance. Search and Seizure,* Electronic surveillance, Warrant. *Constitutional Law,* Search and seizure, Double jeopardy. *Controlled Substances.*

In a criminal case the record did not support the defendant's contention that the prosecution obstructed his access to a material witness. [548-550]

In a criminal case, the warrant exception of G. L. c. 272, § 99 B 4, applied where the record demonstrated that a law enforcement officer received prior authorization of an informant, a party to conversations with the defendant, to record the conversations by means of a transmitter the informant carried and that the transmission and recording was made in the course of an investigation of a designated offense under authority of warrants issued pursuant to G. L. c. 276, §§ 1 et seq., and G. L. c. 220, § 2. [550-552] LIACOS, C.J., dissenting.

In a criminal case, police investigators properly obtained a warrant for the seizure (transmission and recording) of oral communications pursuant to G. L. c. 276, §§ 1 et seq., pursuant to the one-party consent exception of G. L. c. 272, § 99 B 4, and the resulting tape recordings were admissible in evidence: the search and seizure did not violate art. 14 of the Massachusetts Declaration of Rights. [552-553] LIACOS, C.J., dissenting.

In a criminal case, warrants authorizing the seizure of face-to-face oral communications between the defendant and an informant during two brief periods and relating to specifically listed illegal transactions were sufficiently specific in the circumstances and satisfied the requirements of the Fourth Amendment to the United States Constitution. [553-555]

The civil forfeiture of an automobile used to facilitate trafficking in cocaine does not constitute punishment for double jeopardy purposes in a later criminal proceeding. [555-556]

At the trial of indictments for trafficking in cocaine there was no error in the judge's admission in evidence of drugs and certificates of analysis, and any weakness in the chain of custody of the drugs went to the weight and not the admissibility of the evidence. [556]

INDICTMENTS found and returned in the Superior Court Department on November 17, 1987.

After review by the Appeals Court, 32 Mass. App. Ct. 36 (1992), a pretrial motion to suppress evidence was heard by *Regina L. Quinlan*, J.; the case was tried before *Catherine A. White*, J., and postconviction motions were heard by her.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Frances L. Robinson* for the defendant.

*Gregory I. Massing*, Assistant Attorney General, for the Commonwealth.

Abrams, J. After retrial, see *Commonwealth* v. *Penta*, 32 Mass. App. Ct. 36, 49 (1992), the defendant, Anthony Penta, was convicted of (1) trafficking in cocaine in excess of 200 grams, and (2) trafficking in cocaine in excess of twenty-eight grams.[1] The defendant appeals alleging that: (1) the prosecutor interfered with his ability to procure a witness favorable to him; (2) his motion to suppress should have been allowed; (3) his convictions violate principles of double jeopardy; and (4) the judge erred in ruling that the drugs and certificates of analysis were admissible. We transferred the case to this court on our own motion. For the reasons stated in this opinion, we affirm the defendant's convictions.

After filing his appeal, the defendant obtained a stay of the appeal and filed a motion pursuant to Mass. R. Crim. P. 30 (a), 378 Mass. 900 (1979), to vacate his sentence on double jeopardy grounds. The defendant's motion was denied. Appeal from that denial has been consolidated with the defendant's appeal from his convictions.

*Facts.* The evidence at the second trial substantially was similar to that presented at the first trial and recited in detail in the Appeals Court's opinion, *Commonwealth* v. *Penta*, *supra* at 37-40. We recite only the basic facts, supplementing when necessary in discussion of a particular issue.

---

[1]The Appeals Court had reversed the defendant's prior convictions, concluding that the trial judge erred in allowing an informant, Jeffrey Mueller, to claim a privilege against self-incrimination under the Fifth Amendment to the United States Constitution and avoid testifying at Penta's first trial. *Commonwealth* v. *Penta*, 32 Mass. App. Ct. 36, 44-47 (1992).

Although the record before the court seems to indicate that both indictments charged the defendant with trafficking in cocaine in excess of twenty-eight grams, it is clear that on indictment no. 87-03109 the defendant was tried, convicted, and sentenced on an indictment charging trafficking in cocaine in excess of 200 grams.

In September, 1987, Jeffrey Mueller approached the Federal Bureau of Investigation (FBI) and offered to purchase drugs from Penta. The FBI referred Mueller to the State police. On two occasions, October 8 and October 22, 1987, Mueller, while under surveillance by the State police, purchased twenty-eight grams (one ounce) of cocaine from Penta. On the second of these occasions, Mueller wore a transmitter authorized by a previously obtained warrant. A tape recording was made of a conversation between Mueller and Penta on the afternoon of October 22, 1987, during which Mueller and the defendant discussed a sale by Penta of at least eight ounces (approximately 225 grams) of cocaine. The contemplated sale occurred on November 5, 1987.

Prior to Mueller's arrival at the meeting on November 5, 1987, the police obtained another warrant and again wired Mueller with a transmitter. Over the transmitter, the police heard discussion of the drug buy. They moved in and arrested the defendant while he was counting the money.[2] The police then executed a search of the defendant's residence.[3] They seized 63.2 grams of cocaine, a cash box, a grinder, inositol powder (cocaine dilutant), pieces of window glass, a scale, and a pager from the defendant's home. The defendant's 1987 Mercury Cougar automobile also was seized.

1. *Failure of Mueller to appear and testify at trial.* The defendant argues that his convictions must be reversed because he was unable to procure Mueller's testimony at his retrial. The defendant alleges that Mueller's failure to appear was due to obstruction by the prosecutor and therefore asserts his convictions must be reversed.

Because Mueller was not in the custody of the Commonwealth,[4] the Commonwealth had no affirmative duty to produce Mueller for trial. See *Commonwealth* v. *Curcio*, 26 Mass. App. Ct. 738, 747 (1989); *United States* v. *Russo*, 540 F.2d 1152, 1155 (1st Cir.), cert. denied, 429 U.S. 1000 (1976)

[2]The police arrested John Mele, the defendant's cousin, approximately one block away. In a manila envelope on his person, Mele had 249.4 grams of cocaine.

[3]On October 30, 1987, when the police obtained authorization for a "body wire" to be worn by Mueller, they also sought and obtained warrants to search the defendant's home and car.

[4]Mueller had ceased to cooperate with the Commonwealth more than five years prior to the second trial. The Commonwealth has had no communication with him since the summer of 1988.

("there is no absolute rule of production [of informant]"); *United States* v. *Williams,* 496 F.2d 378, 382 (1st Cir. 1974) (government's duty to keep track of or search for informant depends on many factors including extent of government control over witness, importance of witness's testimony, difficulty of finding witness; on timely demand, government only required to make affirmative showing satisfactory to court why it could not reasonably be expected to locate informant and that its conduct has been diligent). The Commonwealth's obligation was to provide the defendant with Mueller's last known address and to refrain from obstructing the defendant's access to Mueller. See *Commonwealth* v. *Curcio, supra* ("The Commonwealth, neither by itself nor by connivance with the informer, was to put any obstruction between the defense and the informer, and it must offer the defense whatever information it had about the informer's location"). See also *Commonwealth* v. *Manrique,* 31 Mass. App. Ct. 597, 599-603 (1991) (prosecution fulfils obligation by offering to provide all information as to latest location of informant). The Commonwealth has complied fully with the motion judge's direction to attempt to locate Mueller and provided the defendant with an address in Caribou, Maine. This address enabled defense counsel to initiate communication with Mueller.

The defendant, nonetheless, claims that the Commonwealth is responsible for his inability to secure Mueller's presence because of the Commonwealth's unexecuted threat to Mueller of a perjury prosecution. The record does not support the defendant's claim. The only "threat" made by the prosecutor was a request, made in open court at a hearing on reconsideration of the defendant's motion to suppress, that Mueller be given notice under G. L. c. 268, § 4 (1994 ed.), that his inconsistent testimony in two judicial proceedings could result in prosecution for perjury.[5] Mueller had previously acknowledged that he was aware of his rights and possible exposure

[5]General Laws c. 268, § 4 (1994 ed.), provides: "If it appears to a court of record that a party or a witness who has been legally sworn and examined, or has made an affidavit, in any proceeding in a court or course of justice has so testified as to create a reasonable presumption that he has committed perjury therein, the court may forthwith commit him or may require him to recognize with sureties for his appearance to answer an indictment for perjury . . . ."

It was proper for the prosecutor to request and for the judge to give this notice considering that Mueller had acknowledged that his testimony at the

to perjury charges and he was represented by counsel both before and during the hearing. There was no prosecutorial misconduct. Contrast *Commonwealth* v. *Turner,* 37 Mass. App. Ct. 385, 387 (1994) (prosecutor's threats made at a tavern to defense witnesses that "You better not show up in court," "I'll tear you apart," and "I'll end up putting you away too," violated the defendant's constitutional right to prepare a defense); *United States* v. *Morrison,* 535 F.2d 223, 225-227 (3d Cir. 1976) (prosecutor's actions, after judge agreed to give witness warning as to rights, in subpoenaing defense witness to office and, in presence of three law enforcement officers [undercover agents in case], impressing on her dangers of testifying violated defendant's right to present witnesses).[6] Dismissal of the charges or reversal of the convictions is not warranted in these circumstances. See *Commonwealth* v. *Turner, supra* at 391; *Commonwealth* v. *Lewin,* 405 Mass. 566, 579 (1989), quoting *Commonwealth* v. *Cronk,* 396 Mass. 194, 198-199 (1985).

2. *Admissibility of evidence obtained through recording of transmissions received by transmitter attached to body of confidential informant.* As part of a police investigation, State Trooper James R. White applied for and received authorization from the court to transmit and record conversations between then-confidential informant, Jeffrey Mueller, and the defendant by means of a transmitter secreted on Mueller. On two dates in October, 1987, White obtained warrants, issued under the authority of G. L. c. 276, §§ 1 et seq.[7]; G. L. c. 220, § 2[8]; and *Commonwealth* v. *Blood,* 400 Mass. 61 (1987), to seize and tape record oral communica-

hearing on the motion to suppress was not the complete truth and that his testimony at the hearing on reconsideration was directly opposite to his previous testimony.

[6]We note that the order of the Aroostock County Superior Court of Maine requiring Mueller's presence at trial expressly provided that Mueller "be given protection from arrest or the service of process, civil or criminal, in connection with matters which arose before his entrance into said State pursuant to said summons." Thus, there was no danger that Mueller's presence at trial would result in his arrest for prior perjury.

[7]Chapter 276 governs the issuance and return of search warrants. Section 1 provides, in part, that search warrants shall not be issued except on probable cause to believe that property or articles were obtained in the commission of a crime, a means or instrumentality of committing a crime, or possessed for an unlawful purpose. Section 1 further provides that "[n]othing in this section shall be construed to abrogate, impair or limit powers of

tions between Mueller and the defendant. On both occasions, White attested that he had received the prior consent of Mueller, and, therefore, believed that the procedures of G. L. c. 272, § 99 (1994 ed.), did not apply.

General Laws c. 272, § 99 B 4 (1994 ed.), defines the term "interception" for purposes of § 99. It provides that "it shall not constitute an interception for an investigative or law enforcement officer, as defined in this section, to record or transmit a wire or oral communication if the officer is a party to such communication or has been given prior authorization to record or transmit the communication by such a party and if recorded or transmitted in the course of an investigation of a designated offense as defined herein." "[D]esignated offense" is defined in § 99 B 7 to include, inter alia, any offense involving the possession or sale of a narcotic or harmful drug in connection with organized crime as defined in the preamble. In the preamble, organized crime is defined as consisting of "a continuing conspiracy among highly organized and disciplined groups to engage in supplying illegal goods and services." See *Commonwealth* v. *Thorpe,* 384 Mass. 271, 281 (1981), cert. denied, 454 U.S. 1147 (1982). The record reveals that Trooper White received prior authorization from Mueller, a party to the conversation, to record the conversation and that the recording and transmission was made in the course of an investigation of a designated offense, see *Commonwealth* v. *Penta, supra* at 43. We conclude, therefore, that the exception in G. L. c. 272, § 99 B 4, applies.[9] A warrant

search and seizure granted under other provisions of the General Laws or under the common law."

[8]General Laws c. 220, § 2 (1994 ed.), provides: "The courts of the commonwealth and the justices thereof shall have and exercise all the powers necessary for the performance of their duties. They may issue all writs, warrants and processes and make and award judgments, decrees, orders and injunctions necessary or proper to carry into effect the powers granted to them, and if no form for such writ or process is prescribed by statute, they shall frame one in conformity with the principles of law and the usual course of proceedings in the courts of the commonwealth."

[9]The defendant argued prior to retrial and again argues before this court that the exception was inapplicable because the affidavit in support of the warrant failed to establish that (1) prior authorization was given; (2) to the law enforcement officer transmitting or recording the communication; (3) by a party to the communication; and (4) that the recording or transmission was done in the course of investigating a designated offense connected

issued pursuant to G. L. c. 272, § 99, was not required in the circumstances of this case.

The defendant maintains that, even assuming a warrant under G. L. c. 277, § 99, was not required, the warrants that did issue were not valid as they purported to issue under the authority of G. L. c. 276, art. 14 of the Massachusetts Declaration of Rights, and the common law and none of those sources authorizes the seizure of oral communications through use of a hidden transmitter.[10] While it is true that G. L. c. 276 does not expressly provide for the seizure of oral communications, see G. L. c. 276, § 1 (defining property), it expressly states that "[n]othing in this section shall be construed to abrogate, impair or limit powers of search and seizure granted under other provisions of the General Laws or under the common law." G. L. c. 276, § 1. Chapter 276 permits a search warrant to issue if based on common law authority and consistent with art. 14. See *Matter of Lavigne*, 418 Mass. 831, 835 (1994) (G. L. c. 276, § 1, permits a search warrant based on common law justification for its issuance).

It is under the common law authority of *Commonwealth* v. *Blood*, 400 Mass. 61 (1987), and its progeny that the Commonwealth justifies the seizure of oral communications pursuant to a warrant issued under G. L. c. 276, §§ 1 et seq. In *Blood*, this court held that art. 14 protected conversants' reasonable subjective expectations of privacy and therefore, prohibited the warrantless surreptitious transmission and rec-

---

with organized crime. The Appeals Court specifically concluded in *Commonwealth* v. *Penta, supra* at 43, that the first judge's finding that Mueller orally consented before the issuance of the search warrant on October 21 was amply supported by the evidence and that the recording and transmission occurred in the course of an investigation of a designated offense as defined in G. L. c. 272, § 99 (1994 ed.). The second judge was under no obligation to revisit these issues. *Commonwealth* v. *Parker*, 412 Mass. 353, 356 (1992), *S.C.*, 420 Mass. 242 (1995). *Commonwealth* v. *Richmond*, 379 Mass. 557, 558 (1980). In these circumstances, we decline to consider these issues. *New England Merchants Nat'l Bank* v. *Old Colony Trust Co.*, 385 Mass. 24, 26 (1982) (we generally decline to reconsider questions decided in earlier appeal in same case).

[10]The defendant does not and could not argue effectively that the seizure was invalid under the Fourth Amendment to the United States Constitution. See *United States* v. *Caceres*, 440 U.S. 741, 749-751 (1979); *United States* v. *White*, 401 U.S. 745, 748 (1971) (plurality opinion); *Lopez* v. *United States*, 373 U.S. 427, 437-438 (1963). See also *Commonwealth* v. *Fini*, 403 Mass. 567, 568 (1988); *Commonwealth* v. *Thorpe*, 384 Mass. 271, 282-283 (1981), cert. denied, 454 U.S. 1147 (1982).

ording of conversations taking place in a private home. *Id.* at 68-70. Because no warrant was sought or obtained, the court in *Blood* did not address the question presented today as to what form of warrant is required to protect a defendant's rights under art. 14. That question was again presented but not reached in *Commonwealth* v. *Price,* 408 Mass. 668 (1990). The *Price* court did not decide whether a warrant issued under authority of G. L. c. 276, §§ 1-7, was sufficient to protect a defendant's art. 14 rights because the court concluded that the defendant did not have standing to challenge the admissibility of the videotapes he sought to exclude. In dictum, however, the court foreshadowed the conclusion we now reach. The court concluded that "even if the defendant had standing, at least the audio portion of the tapes, which was obtained pursuant to a valid search warrant [under G. L. c. 276, §§ 1-7], would still be admissible because the search did not violate the prohibition of art. 14 of the Massachusetts Declaration of Rights against unreasonable searches and seizures." *Price, supra* at 669. We agree.

A warrant obtained in compliance with G. L. c. 276 serves the purpose of art. 14 by subjecting police information to the scrutiny of "a neutral and detached magistrate instead of [leaving them to be] judged by the officer engaged in the often competitive enterprise of ferreting out crime." *Blood, supra* at 73, quoting *Johnson* v. *United States,* 333 U.S. 10, 14 (1948). Such a warrant fulfils the Legislature's mandate that the secret "use of [modern electronic surveillance] devices by law enforcement officials must be conducted under strict judicial supervision." G. L. c. 272, § 99 A (preamble). We, therefore, hold that, when law enforcement officials seek to transmit and record oral communications pursuant to the one-party consent exception of G. L. c. 272, § 99 B 4, they may do so under authority of a warrant pursuant to G. L. c. 276 and the common law. The form of warrant obtained in this case was adequate to protect the defendant's constitutional rights. We have never incorporated the procedures and requirements of G. L. c. 272, § 99, into art. 14. *Commonwealth* v. *Price, supra* at 671 n.2, 674; *Commonwealth* v. *Davis,* 407 Mass. 1001, 1002 (1990). We do not do so now.

The defendant's final argument relating to the validity of the warrants is that the warrants are invalid because the affidavits, applications, and warrants failed to state with

particularity the place and property to be searched. He argues that such warrants are invalid under G. L. c. 276, § 2[11]; art. 14[12]; and the Fourth Amendment to the United States Constitution.[13]

Search warrants must be reviewed in a commonsense, rather than hypertechnical, manner. *Commonwealth* v. *Byfield*, 413 Mass. 426, 430 n.6 (1992); *Commonwealth* v. *Freiberg*, 405 Mass. 282, 299-300, cert. denied, 493 U.S. 940 (1989). Common sense dictates that warrants for the seizure of oral communications not be limited in such a way as to preclude all flexibility and to endanger the safety of the informant or officer on whose body the transmitter is secreted. Cf. *Freiberg, supra* at 299 (where warrant applied for immediately after discovery of body police could not be expected to describe with detailed precision items to be seized; to hold otherwise would unreasonably thwart ability of police to investigate crime immediately after its occurrence). See also *United States* v. *Bianco,* 998 F.2d 1112, 1123 (2d Cir. 1993), cert. denied, 511 U.S. 1069 (1994) (Fourth Amendment should be read with a flexible interpretation to keep pace with a technologically advanced and modern society); *United States* v. *Silberman,* 732 F. Supp. 1057, 1061 (S.D.Cal. 1990), aff'd sub nom. *United States* v. *Petti,* 973 F.2d 1441 (9th Cir. 1992), cert. denied, 507 U.S. 1035 (1993) (same).

The warrants were limited to the seizure of face-to-face

---

[11]General Laws c. 276, § 2, provides, in pertinent part: "Search warrants shall designate and describe the building, house, place, vessel or vehicle to be searched and shall particularly describe the property or articles to be searched for."

[12]Article 14 of the Massachusetts Declaration of Rights provides: "Every subject has a right to be secure from all unreasonable searches, and seizures, of his person, his houses, his papers, and all his possessions. All warrants, therefore, are contrary to this right, if the cause or foundation of them be not previously supported by oath or affirmation; and if the order in the warrant to a civil officer, to make search in suspected places, or to arrest one or more suspected persons, or to seize their property, be not accompanied with a special designation of the persons or objects of search, arrest, or seizure: and no warrant ought to be issued but in cases, and with the formalities prescribed by the laws."

[13]The Fourth Amendment to the United States Constitution provides: "The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

oral communications between the defendant and Jeffrey Mueller during two brief periods (seven days for the October 21, 1987, warrant; fourteen days for the October 30, 1987, warrant) and relating to specifically listed illegal transactions. And, in fact, only conversations between the named parties which related to the illegal sale of cocaine were transmitted and recorded. Accord *Commonwealth* v. *Wilson,* 405 Mass. 248, 250 (1989). The warrants described the conversations to be seized with the level of specificity that was practical in the circumstances. We conclude that a warrant so limited in its scope and application satisfies the requirements of the Fourth Amendment.[14] See *Commonwealth* v. *Westerman,* 414 Mass. 688, 694 (1993). Accord *United States* v. *Ferrara,* 771 F. Supp. 1266, 1292 (D. Mass 1991) (reasonable to describe place to be searched other than by address of single location if not likely to result in mistaken, unjustified intrusions and necessary to maintain requirement of prior judicial approval and to accommodate legitimate, important needs of law enforcement). There was no error.

3. *Double jeopardy.* The defendant claims that the principles of double jeopardy, embodied in the Fifth Amendment to the United States Constitution and the common and statutory law of this Commonwealth, are violated by his criminal prosecution, civil forfeiture of an automobile, and subsequent criminal retrial stemming from the same conduct. The defendant, therefore, urges this court to vacate his criminal conviction, as an impermissible second punishment for the same offense. We conclude, in accord with the most recent pronouncement from the Supreme Court of the United States, that civil forfeiture does not constitute punishment for double jeopardy purposes.[15] *United States* v. *Ursery,* 116 S. Ct. 2135 (1996), is dispositive of the defendant's claim under Federal law. *Id.* at 2142, 2148 (civil forfeiture of automobiles and other property used to facilitate criminal activity does not

---

[14]The defendant makes no argument that G. L. c. 276 or art. 14 requires greater particularity than does the Fourth Amendment. We, therefore, do not review his claim separately under art. 14 or the statute. See *Commonwealth* v. *Walsh,* 409 Mass. 642, 644 (1991); *Commonwealth* v. *Sheppard,* 394 Mass. 381, 389 (1985).

[15]On this holding, we need not decide whether the civil forfeiture in this case, coming after the criminal trial but before the retrial, would be the former or double jeopardy.

constitute punishment for double jeopardy purposes).[16] Accord *Albano* v. *Commonwealth, post* at 1005 (1996).

4. *Admission in evidence of drugs and certificates of analysis.* The defendant asserts that the judge committed error by allowing admission in evidence of drugs and a certificate of reanalysis of the drugs because the Commonwealth failed to establish the chain of custody of the drugs seized on November 5, 1987.[17] The defendant concedes that failure to establish chain of custody usually goes to the weight rather than the admissibility of evidence, but argues for an exception to that general rule in the circumstances of this case. We conclude that the defendant has not presented a basis for an exception to the general rule. Any alleged inconsistencies or failures in the chain of custody properly went to the weight not the admissibility of the evidence. See *Commonwealth* v. *Westerman, supra* at 700 (no prejudice where chemist testified and was subject to cross-examination). See also *Commonwealth* v. *Berth,* 385 Mass. 784, 791 (1982); *Commonwealth* v. *Colon,* 33 Mass. App. Ct. 304, 309 (1992) (arguable weaknesses in chain of custody go to weight of evidence that object introduced is same object connected with crime; chain of custody evidence not nullified by weak link). The evidence as to chain of custody was the subject of testimony and vigorous cross-examination. There was no error in its admission.

*Judgments affirmed.*

LIACOS, C.J. (dissenting). I cannot agree with the court's analysis as to the validity of a search warrant for electronic surveillance where the warrant was issued under G. L. c. 276, § 1 (1994 ed.), and not under G. L. c. 272, § 99 (1994 ed.).

---

[16]The defendant makes no independent claim that the Constitution or laws of this Commonwealth provide greater protection against double jeopardy than does the Fifth Amendment. See *Luk* v. *Commonwealth,* 421 Mass. 415, 416 n.3 (1995) (noting that in these circumstances the common law has not provided greater protection than Federal principles of double jeopardy).

[17]As support, the defendant notes the differences in weight, purity, and consistency in the analyses of the cocaine admitted in the first trial and the second trial and the amount of time that passed between the original analysis and the reanalysis of the drugs.

My reasons are stated at length in my dissent in *Commonwealth* v. *Price*, 408 Mass. 668, 676-680 (1990). I need not repeat my views here. I dissent.