## COMMONWEALTH *vs.* JOEL RODRIGUEZ.

Hampden. October 2, 2007. - December 26, 2007.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, CORDY, & BOTSFORD, JJ.

*Electronic Surveillance. Search and Seizure,* Electronic surveillance, Expectation of privacy, Exigent circumstances. *Constitutional Law,* Search and seizure, Privacy, Probable cause. *Privacy. Probable Cause. Controlled Substances. Practice, Criminal,* Admissions and confessions. *Evidence,* Admissions and confessions.

At a criminal trial, a Superior Court judge properly admitted testimony by a State trooper regarding his recollection of a conversation intercepted through warrantless electronic surveillance, where the wiretapping did not violate art. 14 of the Massachusetts Declaration of Rights, in that both probable cause and exigent circumstances justified the warrantless interception of the conversation [307-309]; further, even if the testimony was improperly admitted due to the Commonwealth's failure to comply with G. L. c. 272, § 99 O 2, which requires service on a criminal defendant of a transcript of the intercepted conversation or a sworn statement of the conversation overheard, such improper admission did not result in a substantial risk of a miscarriage of justice, given the strength of the evidence against the defendant and the cumulative nature of the testimony [309-310].

INDICTMENT found and returned in the Superior Court Department on February 25, 2003.

The case was tried before *Bertha D. Josephson,* J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Beth L. Eisenberg,* Committee for Public Counsel Services, for the defendant.

*Thomas H. Townsend,* Assistant District Attorney, for the Commonwealth.

*David M. Siegel,* for Suffolk Lawyers for Justice, Inc., amicus curiae, submitted a brief.

COWIN, J. A jury convicted the defendant, Joel Rodriguez,[1] of

---

[1]The defendant is also known by the name of Joel Rodriguez Colon.

trafficking in cocaine in excess of 200 grams in violation of
G. L. c. 94C, § 32E (b) (4).[2] The Appeals Court affirmed the
defendant's conviction, *Commonwealth* v. *Rodriguez*, 67 Mass.
App. Ct. 636 (2006), and we granted further appellate review
primarily to consider the defendant's constitutional and statu-
tory claims regarding a conversation intercepted under the author-
ity of G. L. c. 272, § 99, the Massachusetts wiretap act.[3] The
defendant contends that testimony by a State trooper regarding
his recollection of the intercepted conversation was wrongly
admitted because the conversation was obtained in violation of
art. 14 of the Massachusetts Declaration of Rights.[4] The de-
fendant's argument, in essence, is that the wiretap act is un-
constitutional as applied to the facts of his case. We determine
that probable cause and exigent circumstances justified the war-
rantless interception of the conversation, and there was thus no
violation of art. 14. The defendant maintains also that the State
trooper's testimony regarding the intercepted conversation should

---

[2]The jury also convicted the defendant of unlawful possession of a Class D
controlled substance (marijuana). This conviction was placed on file with the
defendant's consent and is not before us.

[3]General Laws c. 272, § 99 C, generally prohibits the secret hearing or rec-
ording of conversations defined as "interception" unless authority has been
given by all parties to the communication. General Laws c. 272, § 99 D,
permits, among other exceptions, interception authorized by a warrant issued
pursuant to the statute. However,

> "it shall not constitute an interception for an investigative or law
> enforcement officer, as defined in this section, to record or transmit a
> wire or oral communication if the officer is a party to such communica-
> tion or has been given prior authorization to record or transmit the
> communication by such a party and if recorded or transmitted in the
> course of an investigation of a designated offense as defined herein."

G. L. c. 272, § 99 B 4. The warrantless interception of the conversation in the
instant case was undertaken under the authority of this section.

[4]Article 14 of the Massachusetts Declaration of Rights provides: "Every
subject has a right to be secure from all unreasonable searches, and seizures,
of his person, his houses, his papers, and all his possessions. All warrants,
therefore, are contrary to this right, if the cause or foundation of them be not
previously supported by oath or affirmation; and if the order in the warrant to
a civil officer, to make search in suspected places, or to arrest one or more
suspected persons, or to seize their property, be not accompanied with a
special designation of the persons or objects of search, arrest, or seizure: and
no warrant ought to be issued but in cases, and with the formalities prescribed
by the laws."

have been excluded because the Commonwealth, in effecting the interception, did not comply with G. L. c. 272, § 99 O 2.[5,6] Because the admission of the trooper's recollection of the intercepted conversation did not result in a substantial risk of a miscarriage of justice, we need not decide whether the conversation was inadmissible as a violation of the wiretap act. We agree with the reasoning and holding of the Appeals Court with respect to the defendant's other claims.[7] Accordingly, we affirm the conviction.

*Facts.* We recite the facts the jury could have found, reserving further details for discussion in conjunction with the specific issues raised. On January 29, 2003, Sergeant John Michel of the State police received from United States Customs Service officials a large box containing a substantial quantity of cocaine. The cocaine was secreted in a bicycle frame within the package.[8] The way-bill indicated that the box was sent from Colombia and was addressed to Pedro Tirado, 5 Ardmore Street, Springfield. On the same day, Sergeant Michel sought and received an anticipatory search warrant[9] for 5 Ardmore Street and assembled officers to deliver the box and then execute the warrant.

---

[5]General Laws c. 272, § 99 O 2, requires service on defendants of a transcript of an intercepted conversation or a sworn statement of the conversation overheard. It provides, in relevant part: "In any criminal trial where the commonwealth intends to offer in evidence any portions of [certain types of] recording[s] or transmission[s] or any evidence derived therefrom . . . the defendant shall be served with a complete copy of each recording or a statement under oath of the evidence overheard as a result of the transmission. . . . [The failure to make such service thirty days before trial] shall render such service illegally obtained . . . and such evidence shall not be offered nor received at the trial notwithstanding the provisions of any other law or rules of court." *Id.*

[6]Aside from this alleged procedural defect regarding service, the defendant does not claim that the wiretap act was otherwise violated.

[7]The defendant argues that the prosecutor improperly used rebuttal evidence in his closing argument, that the denial of the defendant's motion to suppress a statement he made to the police after his arrest was error, and that there was error in the jury instruction regarding trafficking.

[8]No issue has been raised concerning the propriety of the interception of the package by customs officials.

[9]"Anticipatory search warrants typically relate to contraband in transit, where a specific described item is known to be on route to a specific person, often at a specified place, and the warrant is issued before the item reaches that person's hands or the premises to be searched." *Commonwealth* v. *Douglas*, 399 Mass. 141, 144 (1987).

Shortly thereafter, Trooper Michael Joselyn arrived at 5 Ardmore Street posed as a delivery person. Tirado signed for the package after confirming that it was addressed to him. Approximately fifteen minutes later, officers executed the search warrant. They used a battering ram to enter the apartment after receiving no response at the front door, and found Tirado sleeping in a bedroom with his wife. The package had been left just inside the front door and was unopened. Tirado was handcuffed, given Miranda warnings, and told that he was "in trouble."

Tirado denied that the package belonged to him and volunteered to cooperate with the police. He told them the following: about one and one-half weeks earlier, the defendant, an acquaintance Tirado had met through a mutual friend only a couple of months before, offered to pay Tirado $400 if he would accept delivery of a package. Tirado had been to the defendant's apartment three or four times, but the defendant had never been to his. Tirado accepted the defendant's proposal for the money offered. The defendant explained to Tirado how and when the package would arrive, but did not reveal its contents. He told Tirado to telephone him when the package arrived, and said that he would come by to pick it up. After "everything was all right," he would pay Tirado the money. Tirado's actual address was 3 Ardmore Street, Springfield, but he provided the defendant with his wife's address at 5 Ardmore Street because he had been staying there.

After Tirado concluded his story, the officers had him place a telephone call to the defendant. Officer Aurelio Garcia, who spoke Spanish, stood nearby and without the aid of listening devices could hear the conversation between the defendant and Tirado. Tirado told the defendant that "his [defendant's] package" had arrived, and the defendant asked for directions to Tirado's house.

Following the telephone call, Officer Richard Soto was dispatched to the area where the defendant lived to conduct surveillance. He was provided with the defendant's description and told that the defendant would be picked up by a taxicab and driven directly to 5 Ardmore Street. Officer Soto saw a taxicab arrive in front of a building and a man matching the defendant's description leave the building and step into the taxicab. After

radioing these developments back to the other officers, Officer Soto trailed the taxicab during its ten minute drive to 5 Ardmore Street.

While awaiting the defendant's arrival, Officer Garcia placed an electronic monitoring and recording device inside Tirado's shirt pocket. An accompanying device was put inside Trooper Juan Colon's vehicle, parked outside the apartment, to enable the monitoring and recording of Tirado's communications. Trooper Colon later discovered that the volume control on the device had been set too low to produce an audible recording. Nevertheless, he was able to hear some, but not all, of the defendant's conversation with Tirado through the electronic device.

The defendant arrived at 5 Ardmore Street in the taxicab, which parked in front of the address with its trunk open. Tirado met the defendant at the front door and the two men entered the apartment. The defendant "grabbed" the package and paid Tirado $200, telling him that he would pay the remaining $200 balance later. Tirado testified that he asked the defendant to open the package, but the defendant said that he did not have enough time. As the defendant started to leave the apartment with the package, he received a telephone call and asked Tirado to carry the package outside. Tirado replied, "[N]o, it's your package." The defendant ended the telephone call and continued out the door. He had spent no more than ten minutes in the apartment.

The defendant reached the trunk of the taxicab and was placing the package inside when officers appeared, identifying themselves as police. The defendant looked at the officers before fleeing on foot, but he was quickly caught and handcuffed. A search of the defendant revealed three small bags of marijuana, a cellular telephone, and just over $1,000 in cash. Inspection of the box revealed a bicycle frame containing almost 900 grams of seventy-one per cent pure cocaine.

At trial, the defendant testified and denied any prior arrangement with Tirado involving the delivery of the package. The defendant claimed that he first learned of the package on the morning of his arrest, when Tirado called to ask for a favor. According to the defendant, Tirado asked him to pick up the package because he could not keep it at his home due to a problem

with his wife. As for the $200 that was exchanged, the defendant testified that Tirado asked to borrow the money and that he reluctantly agreed only when Tirado promised to pay him back "right away." In rebuttal, the Commonwealth called Trooper Colon, who had monitored the conversation from the adjacent parking lot. Trooper Colon recounted his recollection of the conversation:

> "I hear Tirado actually, excuse me, Joel ask Tirado is everything okay? Tirado says yes, everything is fine. The package is in the room.
>
> "Next thing I hear is Tirado asking Joel to open the package. Joel says no, that he is in a hurry . . . . And then Tirado asked Joel, 'How much are you going to pay me?' And Joel says, 'Four hundred.' And the next thing I hear is money being counted out. Next thing I hear was, 'Help me out.' And then the next thing I see, I see Joel come out with the package, putting it in the trunk."

*Discussion.* The defendant contends that Trooper Colon's recollection of the intercepted conversation was wrongly admitted because the wiretapping violated his rights under art. 14 of the Massachusetts Declaration of Rights. Article 14 guarantees freedom from unreasonable searches and seizures, and evidence obtained in violation of the provision has generally been held inadmissible.[10] *Commonwealth* v. *Blood,* 400 Mass. 61, 62 n.3 (1987). A defendant is not entitled to the suppression of evidence, despite the lack of a warrant, unless he demonstrates that a "search" or "seizure" has occurred. *Commonwealth* v. *Berry,* 420 Mass. 95, 105 (1995), citing *Commonwealth* v. *Pina,* 406 Mass. 540, 544, cert. denied, 498 U.S. 832 (1990). Whether government conduct constitutes a search or seizure depends on whether "the activity intruded on the defendant's reasonable expectation of privacy." *Commonwealth* v. *Pina, supra.* Once the defendant has established a reasonable expectation of privacy, the government must show that its warrantless search was reasonable and lawful. *Id.* A warrantless search cannot be reasonable

---

[10]See *Commonwealth* v. *Sheppard,* 394 Mass. 381, 390-391 (1985) (declining to suppress evidence where violation of art. 14 merely "technical" and search not "unreasonable").

unless the Commonwealth demonstrates probable cause and exigent circumstances. *Commonwealth* v. *Ortiz*, 376 Mass. 349, 353 (1978), citing *Commonwealth* v. *Antobenedetto*, 366 Mass. 51, 57 (1974). "The essence of an exigency is the existence of circumstances known to the police which prevent them from taking the time to obtain a warrant because to do so would thwart . . . the arrest." *Commonwealth* v. *Huffman*, 385 Mass. 122, 126 (1982), quoting Latzer, Police Entries to Arrest — *Payton* v. *New York*, 17 Crim. L. B. 156, 163 (1981).

We assume, without deciding, that the defendant had a reasonable expectation of privacy in the private home in which Tirado was staying. See *Commonwealth* v. *Blood*, *supra* at 68. Thus, a "search" and "seizure" occurred in the constitutional sense when police secretly wiretapped the defendant's conversation in Tirado's wife's home. See *id.* at 77 ("As to each of [the] conversations [recorded in a private home], we hold that its warrantless electronic search by surreptitious transmission and its electronic seizure by surreptitious recording were in violation of art. 14"). Even given this assumption, the interception did not violate art. 14 because it was justified by probable cause and exigent circumstances. See *id.* at 70 n.10 ("We do not, of course, preclude the propriety of warrantless electronic surveillance conducted on probable cause in exigent circumstances").

The defendant contends that exigent circumstances did not exist because the police were in control of the timing of the defendant's arrival at Tirado's wife's apartment and could have obtained a warrant before asking Tirado to telephone the defendant. We conclude otherwise. The police here acted reasonably throughout. A large shipment of cocaine had been addressed to and signed for by a suspect who, in the face of this incriminating evidence, denied immediately that the package was his, claiming instead that it belonged to a "friend." The police cannot be faulted for asking Tirado to contact the defendant in an attempt to substantiate Tirado's story promptly.

Once Tirado placed the telephone call to the defendant and the defendant indicated that he would be arriving in a taxicab, both probable cause and exigent circumstances were present. Tirado's initially questionable story was quickly turning into reality, and there was no time to obtain a warrant. Officer Soto's obser-

vation that a man matching Tirado's description had stepped into a taxicab at the address Tirado had given, and was en route to 5 Ardmore Street, further confirmed Tirado's story. We reemphasize that the standards for an exigency are strict, *Commonwealth* v. *Forde*, 367 Mass. 798, 800 (1975), and police cannot intentionally create exigencies to evade the warrant requirement. In this case, however, we conclude that the police acted reasonably in the course of their investigation and, given the unexpected turn of events, had no opportunity to obtain a warrant. See *id.* at 802-803 ("where the police are conducting an investigation of continuing criminal activities, the exigency of circumstances which develop unexpectedly is not diminished by the fact that in hindsight it appears that there would have been time to obtain a warrant").

Having determined that the interception of the conversation was constitutionally permitted, we acknowledge the defendant's contention on appeal that G. L. c. 272, § 99 O 2, see note 5, *supra*, mandates exclusion of Trooper Colon's recollection testimony. In particular, the defendant maintains that the prosecutor did not provide him with a transcript of the intercepted conversation or a sworn statement of the conversation overheard in accordance with the service provisions of § 99 O 2. However, at trial, the Commonwealth was not put to the test on this provision of the wiretap act because the defendant did not object on this ground at that time. We agree with the Appeals Court that any objection was waived. See *Commonwealth* v. *Rodriguez*, 67 Mass. App. Ct. 636, 640 (2006). We thus evaluate any alleged error to determine if a substantial risk of a miscarriage of justice resulted. See *Commonwealth* v. *Randolph*, 438 Mass. 290, 294 (2002).

We conclude in this regard that, even if evidence based on the intercepted conversation was improperly admitted, it did not result in a substantial risk of a miscarriage of justice. There is uncontested evidence that the defendant arrived at Tirado's home with the intent to pick up the package, and the telephone call that preceded his arrival demonstrated that the package was his. When Tirado telephoned the defendant and told him the package had arrived, the defendant's first response was, "[I]s it okay? Is everything okay with it?" Tirado confirmed that it was, and urged the defendant to get "his" package because Tirado's wife was annoyed and "wanted the package gone." The

defendant's attempt to flee from the police before he was arrested additionally bolsters the evidence of guilt.

Furthermore, Trooper Colon's testimony was scanty and cumulative. Trooper Colon remembered the defendant saying that he would pay Tirado $400 (only $200 was found), and immediately after that he heard money being counted. He also heard someone say, "Help me out." There was a pause, but Colon could not hear the conversation. Colon testified that he did not hear Tirado ask for a loan, but that testimony did not foreclose the possibility that such a request had been made. Tirado also testified to his bedroom conversation with the defendant, and the officer who overheard the initial telephone conversation between the defendant and Tirado (without the aid of listening devices) testified as well. Given the strength of the evidence against the defendant and the sketchy and cumulative nature of Trooper Colon's testimony, we conclude that the admission of the testimony did not result in a substantial risk of a miscarriage of justice.

*Judgment affirmed.*