Gants, Ralph D., J.
On April 8 and April 19, 1999, while the defendant John Tibbs was in custody in a Rhode Island jail (the Wyatt Detention Center) awaiting trial on federal firearm charges, Tibbs’s conversations with Edward Mills and Damon Araujo were recorded by a recording device worn by Mills. The Commonwealth has moved that this Court find these consensually recorded conversations to be admissible at trial; the defendant has moved that they be excluded from evidence. After a non-evidentiary hearing, this Court finds that the tape recordings are admissible at trial to the extent that they are found by the trial judge to be more probative than prejudicial, a decision which is reserved for the trial judge once the Commonwealth makes a final determination as to which portions of these tape recordings it intends to play at trial.
BACKGROUND
In March 1999, Mills, Araujo, and others (but not Tibbs) were indicted by a federal grand jury in Massachusetts on charges of distributing crack cocaine and money laundering. Mills, through his attorney, quickly decided to explore the possibility of cooperating with federal authorities. On April 7, 1999, Mills executed a proffer agreement with the U.S. Attorney’s Office for the District of Massachusetts and the Suffolk County District Attorney’s Office in which he agreed to provide information to law enforcement officers and consensually record conversations at the direction of law enforcement officers, in return for the government’s promise not to make direct use against him of any such statements or recorded conversations. As part of this proffer, Mills provided information regarding Tibbs’s participation in various murders and shootings, including the murder and shootings at issue in the instant case. Mills agreed to wear a recording device (“a wire”) during conversations with Tibbs in order to demonstrate his truthfulness in the proffer and develop evidence against Tibbs that could be used against him in any prosecution that may arise from the information furnished by Mills. At the time, Mills, Araujo, and Tibbs were all detained awaiting trial at the Wyatt Detention Center in Rhode Island. Tibbs was held there awaiting trial on a federal indictment alleging firearms violations that were unrelated to the indictment on which Mills and Araujo were charged. On April 8 and 19, 1999, an FBI agent planted the wire on Mills’s person before he met with Tibbs and Araujo in a common area of the jail.[1] Mills then engaged Tibbs in conversation, which was recorded, in which they discussed the narcotics charges against Mills and Araujo, and the danger that the government will uncover evidence that will lead to murder charges against them. Tibbs was not aware that Mills was wearing a wire during their conversations, and did not consent to having them recorded. No search warrant or comparable judicial authorization was sought prior to the consensually recorded conversations.
*398 DISCUSSION
The defendant contends that these consensual recordings must be suppressed under G.L.c. 272, §99(P) and art. 14 of the Massachusetts Declaration of Rights. This Court finds, on two separate and independent grounds, that these conversations were not unlawfully intercepted and are admissible at trial in this case. First, even if these conversations had been recorded in Massachusetts rather than in Rhode Island, this Court finds that they were lawfully recorded under Massachusetts law and need not be suppressed despite the absence of a search warrant. Second, since these conversations were recorded in Rhode Island rather than Massachusetts, they are governed by Rhode Island law, which requires no search warrant for consensual recordings made under the circumstances found in this case.
1. The First Separate and Independent Ground for Admissibility
Under Massachusetts law, “the term ‘interception’ means to secretly hear, secretly record, or aid another to secretly hear or record the contents of any wire or oral communication through the use of an intercepting device by any person other than a person given prior authority by all parties to such communication.” G.L.c. 272, §99(B)(4) (emphasis added). However, that definition contains an exception when one party to the conversation gives prior authorization to an investigative or law enforcement officer to record the conversation and the conversation is recorded “in the course of an investigation of a designated offense as defined herein.” Id. Here, there can be no dispute:
that Mills secretly recorded these conversations without Tibbs’ knowledge or consent;
that Mills gave prior authorization to law enforcement officers to record the conversation in accordance with his earlier proffer agreement; and
that the conversations were recorded in the course of an investigation of a designated offense, specifically murder, narcotics crimes, and assault and battery with a dangerous weapon, each committed in connection with “organized crime,” as that term is defined in the preamble to G.L.c. 272, §99(A) — "a continuing conspiracy among highly organized and disciplined groups to engage in supplying illegal goods and services." Id.
Therefore, it is plain that the consensual recordings of Tibbs by Mills were not “interceptions” as defined under G.L.c. 272, §99(B)(4). Since they are not “interceptions” under G.L.c. 272, §99(B)(4), they do not require the judicial authorization that G.L.c. 272, §99 requires before the government may conduct what is commonly referred to as electronic surveillance — the recording and/or transmitting of oral or wire communications in which no party to the communication has consented to the interception. See Commonwealth v. Blood, 400 Mass. 61, 67 (1987) (“because the statute does not outlaw surveillance of organized crime involving statutorily designated offenses where investigators have either a warrant or ‘one party consent,’ the fruits of surveillance so conducted are not statutorily suppressible’j; Commonwealth v. Penta, 423 Mass. 546, 551-52 (1996) (“The record reveals that Trooper White received prior authorization from Mueller, a party to the conversation, to record the conversation and that the recording and transmission was made in the course of an investigation of a designated offense . . . We conclude, therefore, that the exception in G.L.c. 272, §99(B)(4) applies. A warrant issued pursuant to G.L.c. 272, §99, was not required in the circumstances of this case.”).
However, the Supreme Judicial Court has held that, when one-party consensual recordings are made in a private home, they intrude upon the defendant’s reasonable expectation of privacy in that home under art. 14 of the Massachusetts Declaration of Rights and may be conducted only when authorized by a search warrant. Commonwealth v. Blood, 400 Mass. at 76-77 (“in circumstances not disclosing any speaker’s intent to cast words beyond a narrow compass of known listeners, we conclude that it is objectively reasonable to expect that conversational interchange in a private home will not be invaded surreptitiously by warrant-less electronic transmission or recording”); Commonwealth v. Penta, 423 Mass. at 550-53 (traditional search warrant under G.L.c. 276 is sufficient to authorize one-party consensual recording). To this degree, art. 14 of the Massachusetts Declaration of Rights provides defendants with greater protection than the United States Constitution, because “war-rantless surveillance with ‘one party consent’ has been held to lie beyond the protective reach of the Fourth Amendment to the United States Constitution.” Commonwealth v. Blood, 400 Mass. at 67, citing United States v. Caceres, 440 U.S. 741, 750-51 (1979), relying on United States v. White, 401 U.S. 745, 751 (1971).
The conversations with Tibbs that Mills recorded, however, were not made in a private home; they were made in a common area of a jail. “A place of incarceration is not accorded the protection given a private residence.” Cacicio v. Secretary of Public Safety, 422 Mass. 764, 772 (1996). To include these conversations within the scope of art. 14 would require this Court to extend the reach of art. 14 beyond recorded conversations that take place within a private home, to include any recorded conversation wherever held. This Court knows of no case in which any Massachusetts appellate court has held that a so-called “Blood warrant” is required when the one-party consensual recording is made outside of a private home. Indeed, various Massachusetts appellate cases have understood the holding in Blood to be limited to consensual recordings in private homes. See Commonwealth v. Penta, 423 Mass. at 552-53 (“In Blood, this court held that art. 14 protected conversants’ reasonable subjective expectations of privacy and therefore, prohibited the warrant- *399 less surreptitious transmission and recording of conversations taking place in a private home”); Commonwealth v. Gonzalez, 426 Mass. 313, 317 (1997) {“Blood involved warrantless recordings by State officials in private homes”); Cacicio v. Secretary of Public Safety, 422 Mass. at 772 (“We have accorded art. 14 protection against secret electronic surveillance in a private home”); Commonwealth v. Abdul-Kareen, 56 Mass.App.Ct. 78, 79 n.1 (2002) (“As the interception did not take place in a private residence, it is doubtful that a warrant was required under Commonwealth v. Blood"); Commonwealth v. Remedor, 52 Mass.App.Ct. 694, 698 n.3 (2001) (“The Blood overlay of a requirement to obtain a search warrant seems to have been limited by later cases to intercepts of conversations occurring entirely within a private home,” citing Commonwealth v. Price, 408 Mass. 668, 674, (1990) (defendant lacked standing to challenge one-party recording of conversation made in a motel room), and Commonwealth v. Eason, 427 Mass. 595, 600 (1998) (no Blood warrant required for police to listen on a telephone extension, with one party consent, to a telephone call made to the defendant’s residence)).
Even if the Supreme Judicial Court were to apply art. 14 to consensually recorded conversations made outside a private home, this Court anticipates that it would only be applied to places where the defendant’s reasonable expectation of privacy would be comparable to a private home. See Commonwealth v. Rodriguez, 450 Mass. 302 (2007) (Blood warrant required only when the consensually recorded conversation occurred in a place where the defendant had a reasonable expectation of privacy).[2] A common area of a jail is hardly a place where a detainee has a reasonable expectation of privacy. See Cacicio v. Secretary of Public Safety, 422 Mass. at 772. Therefore, this Court finds that art. 14 does not apply to the recordings made by Mills of his jail conversations with Tibbs because the recordings were not made in a private home or in a place where Tibbs had a comparable expectation of privacy. As a result, no Blood warrant would be required even if these conversations had been recorded in a jail in Massachusetts.
2. The Second Separate and Independent Ground for Admissibility
Here, of course, the recorded conversations occurred in a Rhode Island jail, not a Massachusetts jail. Rhode Island law is materially different from Massachusetts law with respect to one-party consensual recordings. In contrast to Massachusetts law, Rhode Island has adopted the federal constitutional and statutory law that provides that, when one party to the conversation seeks to record it without the consent or knowledge of the other, the recording does not constitute electronic surveillance requiring prior judicial authorization when it is made at the direction of law enforcement officers as part of a criminal investigation. State v. Ahmadjian, 438 A.2d 1070, 1080-82 (Supreme Ct.R.I. 1981) (“The State Police were not obliged to obtain a court order before monitoring Ormiston’s conversations with Pugh and Carlin when Ormiston had already consented”). “In situations where an individual consents to having his communications monitored,” the Rhode Island statute governing electronic surveillance — G.L. 1956 (1969 Reenactment) title 12, c. 5.1 — does not apply. Id. at 1080 (“participant monitoring is not governed by the requirements of chapter 5.1”). Rather, such situations are governed by another Rhode Island statute, which provides, “It shall not be unlawful under this chapter for:... [a] person acting under color of law to intercept a wire or oral communication, where such a person is a party to the communication, or where one of the parties to the communication has given prior consent to such interception . . .” Id., quoting G.L. 1956 (1969 Reenactment) §ll-35-21(c)(2), as assigned, P.L. 1969, c. 55, §3.[3] As a result, in Rhode Island, communications recorded with the consent of one party acting under color of law are admissible in a criminal proceeding, limited in their admissibility only by the rules of evidence. Id. “Since the Legislature has declared that participant monitoring is lawful in §11-35-21(c)(2), there is no need for it to make any additional provision.” Id.
Here, there can be no dispute that the one-party consensual recordings made at the Wyatt Detention Center in Rhode Island with Tibbs were made under color of law and that one party (Mills) gave prior consent to its interception. Therefore, there can be no dispute that these recordings are lawful under Rhode Island law and would be admissible in a Rhode Island court, provided they otherwise satisfied the rules of evidence.
The issue before the Court, then, is whether a one-party consensual recording made under color of law in Rhode Island, which is lawful under Rhode Island law and admissible in a Rhode Island court, must be suppressed from evidence in a criminal trial in a Massachusetts court. A conversation recorded in Rhode Island with only one party’s consent does not violate G.L.c. 272, §99, because the statute does not apply “to recordings made outside of Massachusetts.” Commonwealth v. Wilcox, 63 Mass.App.Ct. 131, 139 (2005) (refusing to suppress videotape of interview with the defendant at a police station in Rhode Island when the defendant did not know the interview was being videotaped). Nor can it violate art. 14 because the law enforcement agents who, through their cooperating witness (Mills), recorded the conversation did not violate the law of the jurisdiction in which the recording took place. See Commonwealth v. Gonzalez, 426 Mass. at 317 (finding that a one-party consensual recording with a federal agent as part of a federal investigation need not be suppressed under art. 14 “because the Federal agents did not violate Federal law”). Since the one-party consensual recording in *400 Rhode Island did not violate Rhode Island law, G.L.c. 272, §99, or art. 14, there is no legal basis to bar its admission into evidence in a Massachusetts criminal trial, provided the recording satisfies the Massachusetts common law of evidence, including that eviden-tiary principle which requires evidence to be more probative than unfairly prejudicial.
Nothing makes plainer the correctness of this conclusion than imagining the opposite conclusion — that such a recorded conversation must be suppressed unless authorized by a Blood warrant. If this were the law, and if the Assistant District Attorney sought the issuance of a search warrant, he might first approach a Massachusetts judge to seek her approval of a Blood warrant to authorize the recording. The Massachusetts judge, however, would have no authority to issue a search warrant for a “search” that would take place in another state; the fact that the “search” was for a one-parly recorded conversation rather than for contraband in an identified place legally is inconsequential in terms of the court’s authority to issue the warrant. Having been told by the Massachusetts judge that she had no legal authority to approve the Blood warrant, the Assistant District Attorney might approach a Rhode Island judge and seek her approval of the search warrant. The Rhode Island judge would doubtless declare that no. warrant was needed, because a one-party consensual recording made under color of law in Rhode Island is lawful without prior judicial authorization. The Assistant District Attorney, consequently, would have no way to obtain a Blood warrant and therefore no way to admit the Rhode Island conversations into evidence in a Massachusetts criminal trial, even though the conversations were lawfully obtained and admissible in a Rhode Island court. The bizarre consequence of such a rule would be that a Massachusetts prosecutor would be able to admit a one-party consensually recorded conversation into evidence if the conversation took place in Massachusetts (by obtaining a Blood warrant), but would have no means of admitting that conversation into evidence if it took place outside Massachusetts in a jurisdiction where no prior judicial authorization is required for one-party consensual recordings.[4]
This Court need not dwell long on the defendant’s two other arguments for suppressing the evidence. First, the defendant claims that the statements he made to Mills were not voluntary. This Court recognizes that the defendant’s statements are not admissible unless this Court finds beyond a reasonable doubt, based on the totality of the circumstances, that the statements were made voluntarily. Commonwealth v. Tavares, 385 Mass. 140, 151-52 (1982). A statement is voluntary if it is the “product of any meaningful act of volition,” and not induced by physical or psychological coercion. Commonwealth v. Masskow, 362 Mass. 662, 666 (1972), quoting Blackburn v. Alabama, 361 U.S. 199, 211 (1960). See also Commonwealth v. Williams, 388 Mass. 846, 856 (1983) (confession is involuntary if it is a product of inquisitorial activity which overbears defendant’s will). In Commonwealth v. DiGiambattista, the Supreme Judicial Court found that a statement to the police may be involuntary when it is obtained through “a combination of trickery and implied promises, a combination that we have recognized as potentially coercive to the point of making innocent people confess to crimes.” 442 Mass. 423, 439 (2004). Having considered the totality of the circumstances, this Court finds that the defendant’s statements were voluntary beyond a reasonable doubt.
Second, the defendant claims that his right to counsel under Massiah v. United States, 377 Mass. 201 (1964), was violated when law enforcement agents caused Mills to engage in recorded conversations with Tibbs after Tibbs’s initial appearance, when he was represented by counsel in the criminal proceeding for which he was detained awaiting trial. See Commonwealth v. Murphy, 448 Mass. 452, 459 (2007) (“Under the Sixth Amendment, if the government uses an agent deliberately to elicit statements from a defendant absent his counsel, those statements must be suppressed”). At the time of these recorded conversations, however, Tibbs was represented only on the federal firearms charges for which he had been indicted. The recorded conversations are not being used in that criminal proceeding for which Tibbs’s right to counsel had attached. Rather, the Commonwealth seeks to admit the recorded conversations with respect to the murder and armed assault charges in the instant indictments, which had not been brought at the time of the conversations and which have no connection to the then-pending federal firearm charges. The admission of the recorded conversations as to charges which are not “inextricably intertwined” with the charges pending against the defendant at the time of the elicited statements violates neither the Sixth Amendment nor art. 12. Commonwealth v. Rainwater, 425 Mass. 540, 556 (1997), cert. denied, 522 U.S. 1095 (1998).
ORDER
Therefore, for the two separate and independent reasons detailed above, this Court finds that the one-party recorded conversations with Tibbs need not be suppressed under either G.L.c. 272, §99, or art. 14. Their admissibility at trial now shall be governed solely by the common law of evidence, specifically on whether the admission of all or part of the recordings would be more unfairly prejudicial than probative. Such a determination must await the Commonwealth’s decision as to which parts of these recordings it intends to play to the juiy and the trial judge’s decision as to whether all or some of the portions the Commonwealth intends to play are, on balance, more probative than unfairly prejudicial.

When the recordings were made, Araujo was also cooperating with the U.S. Attorney’s Office in the hope of obtaining *401 a plea agreement, but he did not wear a wire during the conversation with Tibbs.

This Court notes that, In Rodriguez, decided only a few days ago (December 26, 2007), the Supreme Judicial Court expressly assumed, without deciding, that the defendant had a reasonable expectation of privacy in the private home of the person who wore the wire. 450 Mass. 302. Consequently, the Supreme Judicial Court expressly avoided deciding whether art. 14 applies to consensual recordings made in all private homes, or is limited to the defendant’s private home. This suggests that, if anything, the Supreme Judicial Court is more likely to narrow the scope of Blood than to extend it, since the recordings made in Blood were made in the private homes of Blood’s joint venturers, not in Blood’s private home.

Nhe Rhode Island Supreme Court noted that this statute was modeled after Section 2411(c)(2) of the federal Omnibus Crime Control and Safe Street Act of 1968, which is nearly identical in its wording. 18 U.S.C. §2511 (2)(c).

In view of the Court’s reasoning, this Court expressly did not admit evidence regarding and did not decide whether Tibbs was recorded as part of a “State-oriented investigation” or “a combined enterprise between State and Federal officials.” Commonwealth v. Gonzalez, 426 Mass. at 316-17 (1997). If an appellate court finds that this Court erred and that the admissibility of the tape recording depends on whether the conversations were recorded as part of a “State-oriented investigation” or “a combined enterprise between State and Federal officials,” this Court will need to conduct the evidentiary hearing that it thought to be unnecessary.